257 So.2d 136

STATE of Louisiana

v.

Preston PEBWORTH.

No. 51691.

Jan. 17, 1972.

Dissenting Opinion Jan. 27, 1972.

Robert A. Connell, Jackson, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Richard H. Kilbourne, Dist. Atty., Fred C. Jackson, Asst. Dist. Atty., for plaintiff-appellee.

HAMLIN, Justice:

Defendant appeals from his conviction of simple escape, LSA–R.S. 14:110.2,[1] and

---

1. "Notwithstanding the provisions of any other law to the contrary, including the provisions of R.S. 14:110, simple escape from the Louisiana State Penitentiary is the intentional departure of a person while imprisoned at said penitentiary, and under circumstances wherein human life is not endangered, from the custody of any official, officer or employee of said penitentiary or any other law enforcement officer of the State of Louisiana or a political subdivision thereof or from any place where such person is lawfully detained.

"Whoever commits the crime of simple escape from the Louisiana State Peniten-

his sentence to serve ten years in the Louisiana State Penitentiary, said sentence to run consecutively with any sentence being served. Two Bills of Exceptions are the basis of this appeal.

By Bill of Information, the State charged that "Preston Pebworth and Robert James Miller having been sentenced to and while incarcerated at the Louisiana State Penitentiary did intentionally depart, under circumstances wherein human life was not endangered from the lawful custody of Murray Mayeaux, an official of the Louisiana State Penitentiary, and from a place where they were lawfully detained by the said official." A motion for severance was granted to Miller. Pebworth was thereafter tried by jury and found guilty.

Prior to sentence, Pebworth filed a Motion in Arrest of Judgment, which averred:

"1.

"The offense charged is not punishable under a valid statute because the statute defining simple escape from Louisiana State Penitentiary violates the defendant's right to equal protection of the laws under Article 1, Section 2 of the Louisiana Constitution and the Fourteenth Amendment to the Constitution of the United States, in that a more severe punishment is provided for escape from

Louisiana State Penitentiary than for escape from other confinement or imprisonment, and a more severe punishment is provided for escape after conviction and sentence to Louisiana State Penitentiary than for escape prior to being sentenced to Louisiana State Penitentiary or without being so sentenced.

"2.

"The offense charged is not punishable under a valid statute because the statute defining simple escape from Louisiana State Penitentiary is an unreasonable legislative enactment violating the defendant's right of due process under Article 1, Section 2 of the Louisiana Constitution and the Fifth and Fourteenth Amendments to the Constitution of the United States, and to equal protection of the laws under Article 1, Section 2 of the Louisiana Constitution and the Fourteenth Amendment to the Constitution of the United States, in that a more severe punishment is provided for simple escape from Louisiana State Penitentiary than for similar crimes and crimes of equally serious import as set forth in the Louisiana Criminal Code (LSA–R.S. Title 14).

"3.

"The offense charged is not punishable under a valid statute because the penalty

---

tiary shall be imprisoned at hard labor for not less than five years nor more than ten years, provided that such sentence

shall not run concurrently with any other sentence." LSA–R.S. 14:110.2, Act 174 of 1969.

provisions of the statute defining simple escape from Louisiana State Penitentiary set forth a penalty for the offense charged which is so excessive as to amount to cruel and unusual punishment in violation of Article 1, Section 12 of the Louisiana Constitution and the Eighth and Fourteenth Amendments to the Constitution of the United States.

"WHEREFORE, mover prays that he be discharged, his conviction set aside and the prosecution dismissed."

The trial court denied the above motion and sentenced the defendant. Two Bills of Exceptions were reserved—one to the overruling of the Motion in Arrest of Judgment and one to the sentence imposed. Both Bills of Exceptions are formalized into one Bill which avers that the trial court's ruling and sentencing were erroneous because the statute under which the defendant was charged and his sentence imposed, LSA–R.S. 14:-110.2, is invalid and unconstitutional, being an unreasonable legislative enactment which violates many provisions of the Louisiana and United States Constitutions.

Herein, counsel for the defendant filed a Specification of Errors, which avers:

"1. The trial court erred, in denying defendant's motion in arrest of judgment asserting that the offense of simple escape from Louisiana State Penitentiary, with which the defendant was charged is not punishable under any valid statute, in that (a) the statute defining simple escape violated defendant's right to equal protection of the laws by providing a more severe punishment for escape from the penitentiary than for other escapes, and a more severe punishment for escape after being sentenced to the penitentiary than before; (b) the simple escape statute violated defendant's right to due process and equal protection of the laws by providing a more severe punishment than for other equally serious crimes; and (c) the penalty for simple escape is so excessive as to amount to cruel and unusual punishment.

"2. The trial court erred in sentencing the defendant following his conviction by a jury, to a term of ten years at hard labor under the provisions of LSA–R.S. 14:110.2, which violated defendant's right to equal protection of the laws, which was imposed under an unreasonable legislative enactment violating defendant's right to due process of law and equal protection of the laws, and which was so excessive as to amount to cruel and unusual punishment."

█ Counsel for the defendant contends that LSA–R.S. 14:110.2 violates defendant's right to equal protection of the laws by providing a more severe penalty for penitentiary escape than for other forms of escape.

Louisiana law provides three separate penalties for the crime of simple escape:

1. Under LSA–R.S. 14:110.2, supra, a person who is imprisoned in the Louisiana State Penitentiary and commits the crime of simple escape is subject to a penalty of not less than five years and not more than ten years, said sentence not to run consecutively with any other sentence.

2. Under LSA–R.S. 14:110,[2] a person who is imprisoned in jail and sentenced to the Louisiana State Penitentiary and commits the crime of simple escape is subject to a penalty of imprisonment at hard labor for not less than two years and not more than five years, said sentence not to run concurrently with any other sentence.

3. Under LSA–R.S. 14:110 a person who is not sentenced to the Louisiana State Penitentiary and commits the crime of simple escape is subject to a fine of not more than five hundred dollars, or imprisonment for not more than six months, or both, said sentence not to run concurrently with any other sentence.

In the recent case of State v. Coney, 258 La. 369, 246 So.2d 793, the defendant contended in his Motion to Quash that the penalty provision of LSA–R.S. 14:110.2, under which he was prosecuted, was repealed by Act No. 290 of 1970, LSA–R.S. 14:110. This Court affirmed defendant's conviction and sentence, holding that the penalty language of LSA–R.S. 14:110 is designed to make the reduced penalty of the 1970 statute applicable to all Section 110 prosecutions regardless of when the offense occurred, and that it has no effect on the penalty provision of LSA–R.S. 14:110.2. Herein, counsel for Pebworth urges that the Coney interpretation raises the constitutional question of equal protection of the laws. He states that the penalty provisions of the two escape statutes create a three-tiered distinction among the classifi-

---

2. "Simple escape is

"(1) The intentional departure of a person, while imprisoned, whether before or after sentence, under circumstances wherein human life is not endangered, from lawful custody of any officer or from any place where he is lawfully detained by any officer; or

"(2) The intentional failure or refusal of any person serving a sentence and participating in a work release program authorized by law to report to or return from his planned employment or other activity under said program.

"Whoever having been sentenced to the Louisiana State Penitentiary, commits the crime of simple escape shall be imprisoned at hard labor for not less than two years and not more than five years; provided that such sentence shall not run concurrently with any other sentence.

"Whoever not having been sentenced to the Louisiana State Penitentiary, commits the crime of simple escape shall be fined not more than five hundred dollars, or imprisoned for not more than six months, or both; provided that such sentence shall not run concurrently with any other sentence."

LSA–R.S. 14:110, amended by Act 290 of 1970.

cations of simple escape, and that there is no rational basis for such a distinction which places a group of persons similarly situated—prisoners—into different classes on a discriminatory basis. He argues:

"In reviewing the simple escape statutes the most evident discriminatory factor, however, is in the distinction between a jail prisoner who has been sentenced to the penitentiary, but not yet, imprisoned there, and the prisoner who is actually imprisoned at the penitentiary. In the former case the penalty is two to five years; in the latter, five to ten years. This would mean for instance that, on a certain date, a prisoner could be sentenced to Louisiana State Penitentiary and remanded to jail awaiting transport to Angola. A conviction for a simple escape during that interim would merit a maximum sentence of five years. If he were carried to Angola, an escape from there would mean a ten year maximum penalty. Yet if, one day after being received at Angola, the prisoner were sent back to the same jail from which he had been received after sentencing (for instance, for a habeas corpus proceeding), an escape from that same jail and subsequent conviction of simple escape, would again subject him to the heavier penalty."

■ The fixing of penalties for criminal acts is a matter of legislative discretion with which the courts will not interfere save in extreme cases of palpable abuse. State v. Vittoria, 224 La. 258, 69 So.2d 36. The discretion vested in the Legislature to fix penalties for crime and the discretion vested in trial courts to impose sentence should not be interfered with, save where there is a clear and manifest necessity for interfering. State v. Glennon, 165 La. 380, 115 So. 627. See, State ex rel. Coco v. Farmerville Light & Power Co., 144 La. 241, 80 So. 268.

"The discretion of the legislature will not be interfered with by the court except in extreme cases, or unless the penalty prescribed is clearly and manifestly cruel and unusual, and punishment is not to be regarded as either cruel or unusual because never inflicted before on a certain class of criminals, or unless it is so greatly disproportionate to the offense committed as to be completely arbitrary and shocking to the sense of justice." 24B C.J.S. Criminal Law § 1978, p. 552. "The action of Congress in fixing punishment for crime is, of course, subject to the constitutional requirement that the penalty may not be cruel and unusual; i. e., so manifestly disproportionate to the seriousness of the offense or of such a nature that it shocks the conscience and sense of justice. Weems v. United States, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910). The courts, however, have been reluctant to interfere with legislative judgment and discretion unless the

penalty prescribed is clearly and manifestly cruel and unusual. Bailey v. United States, 74 F.2d 451 (10 Cir. 1934)." Coon v. United States, 8th Cir., 360 F.2d 550 (1966).

 Under traditional equal protection principles, a State retains broad discretion to classify as long as its classification has a reasonable basis. Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971). "In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' * * * 'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.' Metropolis Theatre Co. v. City of Chicago, 228 U.S. 61, 69–70, 33 S.Ct. 441, 443, 57 L.Ed. 730. 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393." Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). "Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. * * *" McGowan v. State of Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). A statute that applies to all persons in the same circumstances and conditions is not unconstitutional as discriminatory. State v. Saia, 212 La. 868, 33 So.2d 665 (1948). "Classifications are often based upon the personal characteristics of the persons sought to be dealt with by particular legislation. Legislation has often sought to permit discriminations usually in favor of, but sometimes against, certain groups of society who are identified by special characteristics. Generally speaking, if the courts have been able to ascertain that particular qualities of a group form a reasonable basis for different treatment by the laws and have a proper relation to the purpose sought to be achieved, legislation containing classification founded on personal characteristics has been sustained. Personal qualifications on which classifications have been attempt-

ed are quite diversified, and many are treated in connection with the particular topic to which they are pertinent. They include sex, minority, alienage, race and color, military service, membership in labor unions and employing of labor, age and fitness, and residence." 16 Am.Jur.2d, Constitutional Law, Sec. 513, pp. 898, 899.

"It has been said that the escape section, like other criminal statutes, should be given a strict construction in favor of the freedom of the citizen. * * * But that does not mean that it should be given a wooden construction without taking account of the 'manifest intent of the lawmakers'. * * * Thus the old rule of Heydon's Case, 30 Co. 7a, 76 Eng.Rep. 637 (Exchequer 1584) still has force today; discover the mischief for which the law did not provide, and the true reason of the remedy enacted; then, apply the remedy so as to suppress the mischief." United States v. Person, D.C., 223 F.Supp. 982 (1963). " 'Escapes and attempted escapes from penal institutions or from official custody present a most serious problem of penal discipline. They are often violent, menacing, as in the instant case, the lives of guards and custodians, and carry in their wake other crimes attendent upon procuring money, weapons and transportation and upon resisting recapture.' " From the Government's brief in United States v. Brown, 333 U.S. 18, 68 S.Ct. 376, 92 L.Ed. 442 (1948). See, 30A

C.J.S. Escape p. 874, et seq.; Sol Rubin, The Law of Criminal Correction, Sec. 22, p. 305.

Applying the test of palpable abuse of legislative discretion to LSA–R.S. 14:110.2, we find that the statute violates neither the equal protection of the laws clause of the United States Constitution nor that of the Louisiana Constitution. The status of an inmate of the Louisiana State Penitentiary is different from that of a person who is serving a sentence for the commission of a misdemeanor (of a felony, but is serving his sentence in a parish jail) and from that of a person who is awaiting transportation to the penitentiary. When one enters the penitentiary, he begins a term of imprisonment which encompasses retribution, removal from society, and rehabilitation. Sol Rubin, The Law of Criminal Correction, p. 646. It is mandatory that he remain there for an enumerated length of time; the penitentiary inmate becomes part of an institutional system, which is associated with some violence, some immorality, and some unscrupulosity; he is subject to strict discipline and under guard. Escape is detrimental and sometimes fatal to the prisoner, the institution, and the community where the penitentiary is located. In brief herein, the State says that West Feliciana Parish, where the Louisiana State Penitentiary is located, has for years been plagued with escapes, both simple and aggravated. It states that, "Houses have

been robbed, thefts committed, and citizens have even been murdered." It further says:

"It is common knowledge that by the adoption of LSA–R.S. 14:110.2, the legislature undertook to remedy a situation which was almost intolerable for citizens of West Feliciana Parish, Louisiana and Wilkinson County, Mississippi, who reside in the vicinity of the penitentiary, and by increasing the penalty, to effect a deterrent on penitentiary prisoners bent on escape. The validity of this new act was recently upheld by the Louisiana Supreme Court in State v. Coney, 258 La. 369, 246 So.2d 793 (1971)."

■ We find that the particular qualities of the inmates of the Louisiana State Penitentiary form a reasonable basis for the imposing of a more severe penalty for their escape than for that of persons confined elsewhere. LSA–R.S. 14:110.2 applies to all persons confined in the penitentiary; it is not discriminatory as to the penitentiary inmates. It embodies justified "Fear and Consequences." We further find that the Legislature acted within its constitutional powers in enacting LSA–R. S. 14:110.2; it exercised a discretion which we do not find was abusive. There are many apparent reasons for the justification of the legislative action. LSA–R.S. 14:110.2 will therefore not be set aside by this Court as either discriminatory or violative of equal protection of the laws.

■ Counsel for the defendant further contends that LSA–R.S. 14:110.2 violates defendant's right to due process of law in that "such statute is revealed as an unreasonable legislative enactment when its punishment provision is compared to those for crimes of equally serious import," such as, manslaughter, negligent homicide, aggravated battery, simple battery, aggravated assault, simple assault, negligent injury, simple rape, simple kidnapping, aggravated arson, aggravated criminal damage to property, aggravated burglary, simple robbery, aggravated crime against nature, cruelty to juveniles, illegal use of weapons, aggravated obstruction of highway, resisting an officer, simple escape from jail, criminal anarchy, public intimidation—some of the crimes being accompanied by the threat of bodily harm or the taking or endangering of human life. It is urged that if the legislature has been reasonable in its enactment of prior laws proscribing certain conduct as criminal and defining the penalties for such conduct, then it has been unreasonable in fixing the penalty for simple escape from the penitentiary. It is further urged that the simple comparison points up to the unreasonableness of the statute as an exercise of the State's police power and brings it within the purview of the proscription against such under the due proc-

ess guarantees of the state and federal constitutions.

"A statute which is applicable to all persons under like circumstances and does not subject any individual to an arbitrary exercise of power does not violate the due process or equal protection clauses of the state and federal constitutions. * * *" Standard Homestead Ass'n v. Horvath, 205 La. 520, 17 So.2d 811 (1944). "A state has great latitude in making classifications, so that differences and distinctions in treatment offend the constitutional guarantees only when the variations are arbitrary and without rational basis. Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957); United States v. Burnison, 339 U. S. 87, 70 S.Ct. 503, 94 L.Ed. 675 (1950). * * *" Succession of Vincent, 229 So. 2d 449, writ refused, 255 La. 480, 231 So. 2d 395. " * * * while abitrary or unreasonable classifications may not be set up, there must be differences in character, condition or situation to justify the distinction; that the distinctions and differences in short must bear a due and proper relation to the classification; the equal protection of the laws is afforded if the law in question operates in the same general way on all who belong in the same class. For the same reasons it will not avail appellant under this record to claim under Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L. Ed. 884, that the due process secured by the Fifth Amendment has been in any way denied him." Cunningham v. United States, 5th Cir., 256 F.2d 467 (1958).

As found supra, the penalty provisions of LSA–R.C. 14:110.2 are based on character, condition, and situation. The distinction in the penalty from that imposed by LSA–R.S. 14:110 has a relation to the classification set forth. Having a rational basis, as found supra, we do not find that the variation between the penalty imposed by 14:110.2 and 14:110 is either arbitrary or invidious; there is no constitutional violation of due process of law. We do not find the comparison set forth by defendant's counsel, supra, persuasive, because in enacting LSA–R.S. 14:110.2, the Legislature exercised a constitutional reasonableness with which it is vested.

Counsel for the defendant still further contends that the penalty imposed upon defendant for simple escape from the Louisiana State Penitentiary is so excessive as to amount to cruel and unusual punishment. It is urged that the ten year penalty imposed upon defendant is greatly disproportionate to the offense, goes beyond what is necessary to achieve the Legislature's aim (preventing escapes), and is excessive in relation to the punishment for similar crimes and for most more serious crimes as well.

"In Louisiana it is the exclusive province of the Legislature to say what acts shall constitute crimes and misdemeanors and

to adopt laws prohibiting the commission of them. The Legislature is vested with full power and authority also, subject to constitutional restrictions, to provide punishment for statutory crimes committed subsequent to the adoption of the laws defining them. The *only restrictions imposed by our Constitution upon the Legislature con-cerning the punishment which may be in-flicted for the violation of criminal statutes are that the fines shall not be 'excessive' and that the punishments shall not be 'cruel and unusual.'*" State v. Staub, 182 La. 1040, 162 So. 766 (1935).

The Eighth Amendment to the United States Constitution and Article I, Section 12, La.Const. of 1921, prohibit the infliction of cruel and unusual punishment.[3] "Cruel and unusual punishments are those that are barbarous, extraordinary, or grossly disproportionate to the offense. In short, the constitutional prohibition is directed to punishments that shock the conscience of civilized men." State v. Crook, 253 La. 961, 221 *So.2d 473 (1969).* " 'Appellate courts have no control over a sentence which is within statutory limits. * * * If, however, the sentence prescribed by statute is cruel and unusual within the meaning of the Eighth Amendment, the statute itself is unconstitutional and any sentence imposed thereunder must be set aside.' Gallego v. United States (9 Cir. 1960) 276 F.2d 914, 918. The test is whether the penalty is 'so out of proportion to the crime committed that it shocks a balanced sense of justice.' Id. p. 918;

---

3. "Statutes providing for cruel and unusual punishments are unconstitutional, being prohibited by the organic law which is directed primarily against the character of the punishment and refers to inhuman or barbarous treatment, or punishment unknown at common law, or obsolete.

"Statutes providing for cruel and unusual punishments within the meaning of provisions of the organic law prohibiting the imposition of such punishments are unconstitutional. It is difficult to define with precision what constitutes cruel and unusual punishment in the constitutional sense, and in fact it has not been exactly decided. The constitutional provisions are to be considered in the light of developing civilization, and not in the light of what might in 1787 have been considered cruel and unusual punishment, and the protection of the constitutional provisions extends not only to those convicted but to those held for trial.

"As a general rule, such provisions are directed not so much against the amount or duration as against the character of the punishment, and the fact that the punishment authorized by statute is severe does not of itself make it cruel or unusual, although the punishment, while not cruel and unusual in kind, may be so severe as to fall within the meaning of the constitutional provision. Ordinarily cruel and unusual punishment seems to imply something inhuman and barbarous, or some punishment unknown at common law, such as burning at the stake, breaking on the wheel, and the like, or some degrading punishment which had become obsolete in the state prior to the adoption of its constitution. The prohibition of the constitution unquestionably applies to punishments which amount to physical torture, or to such as would by their character shock the minds of persons possessed of the ordinary feelings of humanity." 24B C.J.S. Criminal Law § 1978, pp. 551 and 552.

Halprin v. United States (9 Cir. 1961) 295 F.2d 458, 460. * * *" United States v. Holman, 9th Cir., 436 F.2d 863 (1970).

We find nothing in the penalty provision of LSA–R.S. 14:110.2, supra, which is barbarous, extraordinary, or grossly disproportionate to the crime of simple escape from the Louisiana State Penitentiary. The penalty provisions of 14:110.2, under the above jurisprudence, are neither cruel nor unusual and are not within the constitutional prohibitions supra. Defendant, therefore, was sentenced within the statutory limit, received due process of law, and was not denied equal protection of the laws.

Bills of Exceptions Nos. 1 and 2 are without merit. The Specification of Errors presented to this Court is likewise without merit.

For the reasons assigned, the conviction and sentence are affirmed.

BARHAM, Justice (dissenting).

In State v. Coney, 258 La. 369, 246 So. 2d 793, we considered the respective effects of R.S. 14:110 as amended in 1970 and R.S. 14:110.2 which was enacted in 1969. The majority there determined that these were two separate statutes covering separate offenses. There were two dissents. Mr. Justice Dixon was of the opinion that the two statutes covered the same offense, and that R.S. 14:110 prevailed, having been amended after the enactment of R.S. 14:-110.2. I was of the opinion that R.S. 14:-110 as amended in 1970 repealed R.S. 14:-110.2. See dissents in State v. Coney, supra.

In the instant case we are presented with an attack upon the constitutionality of R.S. 14:110.2, under contentions that it violates the equal protection guarantee.

Acts of the Legislature are presumed to be constitutional, and statutes which afford protection, privilege, or right to one class, or impose sanctions against one class, are assumed to be reasonable in their classification of those who are affected. However, statutory classification cannot be unfairly discriminatory or irrational. The classification must bear a reasonable relationship to the ends sought to be accomplished by the statute and cannot be founded upon an arbitrary or capricious basis. Wattigny v. State, 257 La. 945, 244 So.2d 842, and cases there cited. The very essence of classification is that the class will have different rights or different burdens from others outside that class. Classification of itself is indicative of the intent to treat with inequality. Equal protection under the Fourteenth Amendment of the United States Constitution requires not that all persons be treated alike but only that all persons in like circumstances be treated in the same manner.

There are two questions to be answered in determining whether a statute violates

the equal protection guarantee: Is the classification which is made in the statute reasonable? If reasonable, does the classification have a rational relation to, and tend to accomplish, the object of the legislation? If these two questions can be answered in the affirmative, the statute does not violate the equal protection clause. In other words, what must be determined is whether the classification is a reasonable differentiation made for the purpose of accomplishing the legislation's object, which cannot be arbitrary or capricious. We then inquire as to what classifications are made by R.S. 14:110 and R.S. 14:110.2.

R.S. 14:110 contains in Paragraph (1) a broad, inclusive definition of the crime of simple escape, but by its penal clauses divides those subject to its provisions into two categories or grades: Those who have been sentenced to the Louisiana State Penitentiary, and those who have not been sentenced to the Louisiana State Penitentiary. There is conflict with R.S. 14:110.2 only as to the first category. It is easy to understand the reason for the two classifications of R.S. 14:110 and to grasp the object which the Legislature intended to accomplish when it made them. R.S. 14:110.2, however, has made a further classification by removing from the first classification of R.S. 14:110 a group which was formerly included in it.

To rephrase R.S. 14:110 so as to make clear the only distinction between it and R.S. 14:110.2, simple escape is the intentional departure of a person *while imprisoned, having been sentenced to the Louisiana State Penitentiary*, under circumstances wherein human life is not endangered, from lawful custody of any officer or from any place where he is lawfully detained by any officer. The penalty is not less than two and not more than five years. R.S. 14:110.2 provides: " * * * simple escape from the Louisiana State Penitentiary is the intentional departure of a person *while imprisoned at said penitentiary*, and under circumstances wherein human life is not endangered, from the custody of any official, officer or employee of said penitentiary or any other law enforcement officer of the State of Louisiana or a political subdivision thereof or from any place where such person is lawfully detained." (Emphasis supplied.) The penalty is not less than five and not more than 10 years.

In State v. Coney, supra, the court said: " * * * LSA–R.S. 14:110.2 dealt with those persons who had been actually imprisoned in Louisiana State Penitentiary, while LSA–R.S. 14:110, as a residuary statute, dealt with those persons who had been sentenced to the penitentiary but had not yet been imprisoned there. Hence, both statutes were valid and enforceable."

The majority in the instant case has found: " * * * The status of an inmate of the Louisiana State Penitentiary is dif-

ferent from that of a person who is serving a sentence for the commission of a misdemeanor (or a felony, but is serving his sentence in a parish jail) and from that of a person who is awaiting transportation to the penitentiary. When one enters the penitentiary, he begins a term of imprisonment which encompasses retribution, removal from society, and rehabilitation. * * * It is mandatory that he remain there for an enumerated length of time; the penitentiary inmate becomes part of an institutional system, which is associated with some violence, some immorality, and some unscrupulosity; he is subject to strict discipline and under guard. Escape is detrimental and sometimes fatal to the prisoner, the institution, and the community where the penitentiary is located. * * * " This is the majority's reasoning of the basic purpose for the classification.

However, the majority makes a finer and more intricate distinction, holding that the actual purpose of R.S. 14:110.2 is to protect the people of West Feliciana Parish where the Angola branch of Louisiana State Penitentiary is located, and therefore the statute is applicable only to escapees from the Louisiana State Penitentiary at Angola. The majority quotes from the argument of the State that the " * * * legislature undertook to remedy a situation which was almost intolerable for citizens of West Feliciana Parish, Louisiana and Wilkinson County, Mississippi, who

reside in the vicinity of the penitentiary, and by increasing the penalty, to effect a deterrent on penitentiary prisoners bent on escape * * * ".

Louisiana State Penitentiary at Angola is only one branch of the Louisiana State Penitentiary system. Prior to the enactment of R.S. 15:824, which now provides that adult felons (hard labor) shall be committed to the Louisiana Department of Corrections and that their placement should be determined by that department, all persons subject to imprisonment at hard labor were sentenced to the Louisiana State Penitentiary and were to be confined in accordance with R.S. 15:851 and other statutes which have now become absorbed into R.S. 15:821 et seq. Felon prisoners were admitted and transferred to a number of other institutions for imprisonment under their sentences.

The majority's conclusion that only inmates at Angola are included in the classification and that the classification was made for the purpose of protecting West Feliciana Parish residents would omit from the classification those actually imprisoned at St. Gabriel (for women), Louisiana Correctional Institute at DeQuincy, and the many other institutions to which prisoners from Angola are transferred while serving time, such as charity hospitals, the mental institution at Jackson, every jail and courthouse to which a pris-

oner is transported for post-conviction proceedings or other purpose.

Furthermore, the majority has concluded that *all imprisoned felons* have the same propensity for escaping and pose the same inherent dangers by their escapes. Therefore under the requirement that all within the same class must be treated equally, the classification which does not include any imprisoned felon who is not at the moment of escape confined within the Angola prison is underinclusive, irrational for accomplishing its purpose, and therefore violative of the equal protection clause.* The act is discriminatory on its face under the majority's determination of the basic purpose for classifying imprisoned felons.

Further, to meet the supportive argument of the majority in its finding that the classification in R.S. 14:110.2 includes *only inmates imprisoned at Angola* and was formed to protect the people of West Feliciana, there is no showing in the record that felons in Angola are more violent, more prone to escape, or in any other respect more likely to possess propensities that need special attention than are those felons who are imprisoned in other institutions. The record is devoid of any evidence that the people in the environs of Angola have the need for special protection which should not be accorded to the people in the neighborhood of every facility in which such felons may be incarcerated. In fact, reason dictates the contrary. Angola is in a remote, sparsely populated area of the state, and provides maximum security facilities. Maximum security-risk prisoners from Angola, however, may be confined in minimal security-risk institutions such as the Charity Hospital and the parish jail in New Orleans as well as parish and city jails throughout the state. One need only read the daily newspapers to know that escapes by those who are confined in the latter institutions are made with more ease and in larger numbers proportionately; and that escapes in cities like New Orleans pose a more serious problem because of the greater density of the population and the metropolitan nature of that area is apparent.

The former law and the law as amended in 1968 provides numerous places of incarceration for felons, and they particularly encompass the right, even the obligation, to transfer numerous prisoners who begin their confinement at Angola to other places of confinement. The majority's

---

* The statute is also overinclusive if the majority's rationale is accepted that its purpose is to protect residents outside the Angola prison, for escape includes within its legal definition many acts which do not require the actual departure from the outer confines of the prison. The imposition of unusually heavy penalties upon those who are legally classified as escapees but who do not threaten the outside environs does not further the purpose of affording protection to the neighboring residents.

justification for the classification of Angola inmates under the inherent danger theory must fail since the danger there mentioned is posed equally in the neighborhoods of all these other institutions. Yet under the majority's classification the people of these areas are not protected.

Thus far I have directed this dissent to the reasonableness vel non of the classification defined by the majority as supported by the State's brief and argument. I have determined that, under its classification and its rationale for support of constitutionality of the statute, the statute is underinclusive, not affording equal treatment to all in the same class; that the classification is arbitrary and capricious, and that it is not reasonably calculated to accomplish the legislative purpose even as the majority defines that purpose.

However, under the wording of R.S. 14:-110.2 I am forced to determine that the reasoning of the State and the majority is specious in defining the class. Accepting the fact for the purpose of this dissent that these statutes define separate offenses, I attempt to classify those who commit one but not the other of those offenses. I do not believe that R.S. 14:110.2 creates a class which includes only felons *imprisoned at Angola*. As was noted previously in this dissent, *Louisiana State Penitentiary* is generally understood in law to refer to the entire penal system for convicted adult

felons, and Angola is only one branch of the penal system of this state.

If the statutes define separate offenses, R.S. 14:110 in pertinent part appears to apply to those prisoners who have been sentenced to hard labor at Louisiana State Penitentiary and whose sentences have become executory; therefore R.S. 14:110.2 must apply to all those persons who, under executory sentences, *have in fact been transferred to the Louisiana State Penitentiary system through some form of admission*. The Legislature has placed in one classification those persons whose sentences are executory because they have not timely appealed or have unsuccessfully appealed but who are imprisoned in local jails awaiting transfer to the penitentiary, and has placed in another classification those who have already been admitted to the penitentiary system. However, even this classification fails under the test for determining whether R.S. 14:110.2 meets the equal protection requirements. The persons in both classifications have been convicted and sentenced to hard labor, and the persons in both classes are serving their terms of imprisonment. The irrationality of differentiation of these two classes is more apparent when it is understood that R.S. 14:110, which is generally considered the residuary statute, actually has application to convicted felons only for a period of 15 days or less.

R.S. 15:566 orders every person under executory sentence to imprisonment at hard labor to be delivered to the Louisiana State Penitentiary within 15 days. As a matter of practice, since parish officials are anxious to be relieved of the responsibility of keeping state prisoners, the delay is usually much less than 15 days. What benefit is secured to anyone—the public, officials charged with incarcertion in institutions, prisoners—for there to be two classifications: (1) Those who have been sentenced to hard labor at the state penitentiary but who for 15 days or less will not have been admitted to imprisonment to that institution; and (2) those who after a lapse of 15 days or less have begun a term of official imprisonment at that institution? Both groups are sentenced; the sentences of both are executory; at that time both are serving the same sentence, imprisonment at hard labor. To place some of the persons in a separate category during a period of one to fifteen days appears purposeless, illogical, unwarranted, and legally untenable.

I am convinced that the likelihood of escape and the accessory risk of escape are greater in the local and interim places of

incarceration which must hold for a brief time felons under executory sentences. There is no logic in imposing a more onerous penalty for escape upon one of these individuals after he has been placed in a maximum security-risk institution for the duration of his sentence

The Legislature has recognized through the predecessors to these acts that convicted felons whose sentences have become executory should be categorized differently from prisoners awaiting trial, prisoners convicted of misdemeanors or minor felonies, prisoners who still seek legal remedies in the trial court or by appeal. But apparently, according to the State a lobby secured the Legislature's approval of a separate classification for prisoners at Angola, and the majority has approved that classification. Yet, as so often happens in the legislative process, the wording of the statute actually encompasses a broader classification. Under either theory of classification the statute is unreasonable, arbitrary, and capricious in classification, and is violative of the equal protection clause of the Constitution.

I respectfully dissent.