480 So.2d 952 (1985)
STATE of Louisiana, Appellee,
v.
Bennie SAMPSON, Appellant.
No. 17478-KA.
Court of Appeal of Louisiana, Second Circuit.
December 4, 1985.
*953 Campbell, Campbell & Johnson by John C. Campbell, Minden, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Henry N. Brown, Jr., Dist. Atty., Benton, James M. Bullers, Asst. Dist. Atty., Minden, for appellee.
Before HALL, FRED W. JONES, Jr. and SEXTON, JJ.
SEXTON, Judge.
Defendant was convicted by jury of aggravated burglary and sentenced to forty years imprisonment thereon subsequent to adjudication as a habitual offender. Defendant appeals this conviction on the basis of six assignments of error. We affirm.

Facts
At approximately 10:00 o'clock p.m. on the night of October 12, 1984, Mary Daniel was awakened by a man who was standing *954 in the doorway to her bedroom calling her name. She jumped out of bed and grabbed a gun which she kept close beside her. The man told her that he also had a gun. Mrs. Daniel could not see whether the man actually had a gun because he had moved out of her sight back into the kitchen. Mrs. Daniel then moved into the doorway of her bedroom. The man then told Mrs. Daniel he wanted her money. She told him where it was, but he made her throw it to him. By this time, Mrs. Daniel's daughter, April, had awakened and entered the kitchen looking for her mother. The man grabbed April by the neck and twisted her arm behind her back. He then forced April to pick up the money on the floor and give it to him. While holding April in this fashion, the man backed up across the living room to the door to April's bedroom. He then turned April loose, ran through her room and escaped through her bedroom window.
Mrs. Daniel recognized the man as the defendant, Bennie Sampson. Mrs. Daniel had met the defendant earlier that day when he came to her home to help a tenant move from the Daniel's mobile home and to find out why Mrs. Daniel was forcing the tenant to move. The record established that defendant gained access into the mobile home by cutting a hole in a window screen and then entering through the open window. The defendant was arrested several days later while working at a trade school.

Change of Plea and Mental Examination Assignments of Error Nos. 1 and 2
By these assignments, defendant contends that the trial court should have allowed him to withdraw his plea of "not guilty" and enter a plea of "not guilty and not guilty by reason of insanity" on the day before trial, and should have ordered a mental examination in accordance with LSA-C.Cr.P. Arts. 643 and 644.
Defendant's initial appearance in court was for appointment of counsel on October 31, 1984. Subsequent to a preliminary examination on November 26, 1984 and the defendant's arraignment on that same date, the case was set for trial on January 21, 1985. Defendant employed private counsel on January 17, 1985, who enrolled on January 21, 1985. Defendant's motion for a continuance filed January 18 caused the case to be reset for January 23, 1985. However, on January 22, 1985, defendant filed a motion to change his plea from "not guilty" to "not guilty and not guilty by reason of insanity." He also filed a motion to appoint a sanity commission pursuant to LSA-C.Cr.P. Arts. 643 and 644.
At the hearing on the motion for a change of plea, the only evidence of impaired mental capacity was testimony by an assistant jailer who testified that he was with approximately five inmates in an elevator getting ready to come to court, when the defendant and a female inmate had words. The defendant then got upset and struck the female inmate. Based on the lack of evidence as to defendant's impaired mental capacity, the trial court denied defendant's motion to change his plea to "not guilty and not guilty by reason of insanity."
LSA-C.Cr.P. Art. 561 provides that a defendant has the right to withdraw a plea of "not guilty" and enter the plea of "not guilty and not guilty by reason of insanity" within ten days after arraignment. Thereafter, the court may allow such a change if good cause is shown. In view of the fact that the only evidence produced by the defendant at the hearing on the motion to change his plea was that he had engaged in an altercation with another prison inmate on the elevator, the trial court did not abuse its discretion in refusing to allow the defendant to change his plea for lack of "good cause." Therefore, there was no indicia of insanity, and no basis for the appointment of a sanity commission. State v. Baldwin, 388 So.2d 664, (La.1980), cert. den. 449 U.S. 1103, 101 S.Ct. 901, 66 L.Ed.2d 830 (1981). See and compare State v. Delpit, 341 So.2d 876 (La.1977); and State v. Taylor, 254 La. 1051, 229 So.2d 95 (1970). These assignments lack merit.

*955 Motion for Continuance Assignment of Error No. 3

By this assignment, defendant contends that the trial court erred in denying his new counsel's motion for a continuance filed on the date of the trial. Defendant asked for a continuance on the grounds that his retained counsel had only been enrolled in the case for six days before trial, and that his counsel had not had adequate time to prepare his defense.
LSA-C.Cr.P. Art. 707 provides that "[a]n application for a continuance shall be by written motion alleging specifically the grounds upon which it is based." Initially we note that defendant did not file a written motion for a continuance. He simply "reurged" his written motion filed earlier, which had been granted. A defense counsel's "reurging" of an earlier written motion for a continuance, which had been granted, does not comply with the requirement of Art. 707 that it be in written form. State v. Burnette, 337 So.2d 1096 (La. 1976). Thus, defendant's motion does not comply with the requirement of LSA-C. Cr.P. Art. 707 that such a motion be in written form.[1]
However, even if defendant's motion was properly filed, we find that the trial judge correctly denied defendant's motion for a continuance.
The law in regard to continuances under these circumstances was succinctly summarized in State v. Jones, 395 So.2d 751, (La. 1981) at page 753.
As a general rule the denial of a continuance is not grounds for reversal absent an abuse of discretion and a showing of specific prejudice caused by denial of the continuance. State v. Durio, 371 So.2d 1158 (La.1979); State v. Hammontree, 363 So.2d 1364 (La.1978); State v. Lukefahr, 363 So.2d 661 (La.1978). Where the continuance motion is based upon the want of time for preparation by counsel, this specific prejudice requirement has been disregarded only in cases where the preparation time was so minimal as to call into question the basic fairness of the proceeding. State v. Durio, supra: State v. Winston, 327 So.2d 380 (La.1976).
The trial court did not abuse its discretion in refusing to grant defendant's motion for continuance. Defendant was represented by appointed counsel at all stages of the proceedings against him. His trial date had been set two months before the trial actually commenced. His appointed counsel was familiar with the case, was ready for trial, and actually assisted retained counsel in the trial. Additionally, retained counsel had five days within which he could have conferred with appointed counsel on the case. Most importantly, no prejudice to defendant has been shown to have resulted from the denial of the motion. There is no merit to this assignment of error.

Defendant in Shackles Assignment of Error No. 4
The defendant contends the trial court erred in denying defendant's motion for a mistrial because the defendant "was paraded in front of prospective and seated jurors while wearing leg shackles."
After approximately five jurors had been selected, defendant attempted to escape from the courthouse during a court recess. As a result, the trial judge ordered the defendant to wear leg shackles. The trial judge also instructed the sheriff not to bring the defendant into the courtroom while the jurors were present so the leg shackles would not be visible. However, on one occasion during voir dire, the defendant was brought into the courtroom *956 wearing leg shackles while several of the jurors were already seated in the courtroom. Defense counsel moved for a mistrial on the basis that defendant's presumption of innocence had been destroyed in view of the fact that several jurors had viewed him in leg shackles. Defense counsel and the prosecuting attorney disagreed as to the extent of the visibility of the leg shackles and whether the jurors actually noticed the shackles. The trial court denied the motion for a mistrial and again requested the sheriff to bring the defendant in before the jury was seated.
In State v. Wilkerson, 403 So.2d 652 (La.1981), defendant was handcuffed by the sheriff at the end of the day but before the jury was completely removed from the courtroom. The defendant was handcuffed only for transport to and from the courtroom. In holding that there was no prejudice where it was only possible that some jurors may have seen the defendant in handcuffs, the court summarized the jurisprudence as follows:
Ordinarily, a defendant before the court should not be shackled or handcuffed or garbed in any manner destructive of the presumption of his innocence and of the dignity and impartiality of judicial proceedings. Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970); State v. Clark, 340 So.2d 208 (La.1976); State ex rel. Miller v. Henderson, 329 So.2d 707 (La.1976). However, exceptional circumstances may require, within the discretion of the trial court, the restraint of the prisoner for reasons of courtroom security or order or where the prisoner's past conduct reasonably justifies apprehension that he may attempt to escape. State ex rel. Miller v. Henderson, supra; State v. Daniel, 297 So.2d 417 (La.1974).
If the handcuffing is objected to at the time of trial, for a finding of reversible error the record must show an abuse of the trial court's reasonable discretion resulting in clear prejudice to the accused. State ex rel. Miller v. Henderson, supra.

In following Wilkerson, this court found no abuse of discretion in State v. Colvin, 452 So.2d 1214 (La.App. 2d Cir.1984), writ denied 457 So.2d 1199 (La.1984), as a result of the trial court's refusal to remove leg irons, handcuffs and a transport belt from the defendant who had tried to escape during trial. See also State v. Murphy, 463 So.2d 812 (La.App. 2d Cir.1985), writ denied, 468 So.2d 570 (La.1985).
In the instant case, defendant had been ordered to wear leg shackles by the trial court as a result of a prior escape attempt from the courthouse during a trial recess. The trial judge ordered that the defendant's shackles be handled in the most unobtrusive method possible. At least some of the jurors had already witnessed defendant's attempt to flee the courtroom and were, therefore, aware of the reason defendant was wearing the shackles. Indeed, it is only a possibility that any of the other jurors noticed the defendant was wearing shackles in view of the fact that his blue jeans partially covered them.
Mistrial is a drastic remedy and should only be granted on a showing of substantial prejudice. State v. Murphy, supra. We determine that the trial court did not abuse its discretion in refusing to grant a mistrial here. The shackles were necessitated by the defendant's own conduct in attempting to escape during the course of the trial. There is no showing that defendant's presumption of innocence has been destroyed as a result of the necessary measures employed in this cause. This assignment of error lacks merit.

Child's Testimony Assignment of Error No. 5
By this assignment, the defendant contends that the trial court erred in allowing April Daniel, age 9, to testify as a competent witness.
LSA-R.S. 15:469 provides:
§ 469. Understanding as test of competency; child under twelve years
Understanding, and not age, must determine whether any person tendered as *957 a witness shall be sworn; but no child less than twelve years of age shall, over the objection either of the district attorney or of the defendant, be sworn as a witness, until the court is satisfied, after examination, that such child has sufficient understanding to be a witness.
The trial court examined the child in full compliance with the statute. The trial court questioned her about the difference between telling the truth and telling stories. Defendant's challenge is based on one unresponsive answer given by the child during the court's examination of her. However, the child's sometimes hesitant or unresponsive answers do not necessarily indicate incompetency. State v. Humphrey, 412 So.2d 507 (La.1982). Instead, such actions may be part of the child's overall demeanor caused by the child being simply unfamiliar with the courtroom experience. State v. Sharp, 338 So.2d 654 (La.1976).
Understanding, not age, is the test of competency for any witness. The trial court's judgment on the competency of a child witness is entitled to great weight on appeal because he has the crucial advantage of seeing and hearing the child. State v. Edwards, 420 So.2d 663 (La.1982); State v. Skipper, 387 So.2d 592 (La.1980). This ruling will not be disturbed unless other testimony shows that the ruling was manifestly erroneous. State v. Arnaud, 412 So.2d 1013 (La.1982).
Without the benefit of observing the demeanor of the child on the witness stand, a review of the record pertaining to her examination confirms the correctness of the trial court's ruling. The only unresponsive answer given by the child during this examination was caused by a somewhat confusing question asked by the trial judge. Her testimony clearly indicates she knew the difference between truth and falsehood. A review of her subsequent testimony supports the finding that she had sufficient understanding to testify as a witness. The record indicates that she was alert, forthright and accurate in her responses. There is no evidence of any significant confusion in her replies, not only to the direct examination conducted by the prosecutor, but also to the cross-examination conducted by defense counsel. Nothing in the record lends support to a conclusion that the trial court erred in finding the child to be qualified to be a witness. Consequently, this assignment of error is without merit.

Evidence of Flight Assignment of Error No. 6
By this assignment, defendant contends that the trial court erred in denying defendant's motion for a mistrial after the state introduced testimony of defendant's flight during the investigatory stage of the case.
In the instant case, after obtaining a lead that the defendant was working at a trade school, Deputy Tucker drove to the trade school in an attempt to locate the defendant and question him. Upon arriving at the trade school in a marked police car, Deputy Tucker observed a man digging in a hole beside the street. When this man spotted the police car, he climbed out of the hole and started running away. The deputy asked another man standing nearby if that man was Bennie Sampson, to which the man replied "yes." The deputy then shouted at defendant to stop, so that he might talk to him, but the defendant continued to flee the scene. With the assistance of another officer, defendant was finally apprehended in the trade school.
The defense objection occurred during direct examination of Deputy Tucker concerning the fact of defendant's flight when the deputy arrived at the trade school. Defense counsel objected that the line of questioning was irrelevant. The district attorney countered with the contention that the evidence was relevant because it showed the defendant's flight. In brief, defense counsel contends that the prosecution was referring to flight from an officer, a violation of LSA-R.S. 14:108.1, which was a crime not properly before the court. Defendant *958 asserts that these actions of the prosecution mandate a mistrial under LSA-C.Cr.P. Art. 770.
LSA-C.Cr.P. Art. 770 provides in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * * * * *
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible:
* * * * * *
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
Assuming arguendo that the testimony at issue amounts to evidence of another crime,[2] an exception to the rule of Art. 770 is made if the evidence is substantially relevant for some purpose other than to show that the accused is a bad person and therefore more likely to have committed the crime. State v. Kirkpatrick, 443 So.2d 546 (La.1983), cert. den. ___ U.S. ___, 104 S.Ct. 2374, 80 L.Ed.2d 847 (1984). Evidence of flight, concealment, or an attempt to avoid apprehension is relevant. It indicates consciousness of guilt and, therefore, is one of the circumstances from which the jury may infer guilt. This rule applies notwithstanding that the evidence may disclose another crime. State v. Washington, 430 So.2d 641 (La.1983); State v. Davies, 350 So.2d 586 (La.1977).
Evidence of defendant's flight upon the deputy's arrival was certainly relevant to show his consciousness of guilt. Any possible prejudice to the defendant which may have resulted from the reference was outweighed by the probative value of this evidence. LSA-R.S. 15:441. This assignment of error is without merit.
For the foregoing reasons, the conviction of defendant, Bennie Sampson, is affirmed.
AFFIRMED.
NOTES
[1] We note the exception to this rule as expressed in State v. Parsley, 369 So.2d 1292 (La.1979). There the court ruled that an oral motion for a continuance should be considered when the occurrences that allegedly made the continuance necessary arose unexpectedly and the defense had no opportunity to prepare a written motion. Such is not the case in the instant matter. Defendant had previously been granted a continuance on the same grounds that he was reurging in his oral motion. It can hardly be said that counsel was taken by surprise by any events of the day.
[2] The defendant's conduct does not meet the criteria contained in LSA-R.S. 14:108.1, dealing with flight while in a motor vehicle. It is possible that defendant meant to refer to LSA-R.S. 14:108, Resisting an Officer. However, defendant's conduct does not seem to meet the criteria contained in LSA-R.S. 14:108, because there was no indication that the defendant had been given notice that he was under arrest at the time he fled from Deputy Tucker. Therefore, in all likelihood, the evidence presented was not evidence of another offense. State v. Washington, 430 So.2d 641 (La.1983).