HAMLIN, Justice:
Plaintiffs appeal from a judgment of the trial court which dismissed their demands at their costs and held that LSA-R.S. 3:451 et seq. were not unconstitutional because of legislative and jurisprudential exclusion of certain groups from the sweet potato tax imposed by LSA-R.S. 3:455. Oral argument was not presented to this Court, the matter being submitted on printed briefs.
Plaintiffs,[1] buyers of sweet potatoes for resale in the State of Louisiana and the United States, citizens and taxpayers of the State of Louisiana and of the United States, and residents of certain enumerated parishes, brought this class action, November 17, 1970, in which they challenged in part the constitutionality of Act 434 of 1968; they prayed that the Act be declared illegal, unconstitutional, and violative of Art. X, Sec. 8, La.Const. of 1921,[2] inso *67 far as it levies a tax on sweet potatoes; they further prayed that Act 434 of 1968 be declared unconstitutional in that “it is unequal taxation discriminating taxation in that it makes shippers pay to advertise the produce of a grower-shipper and excessive taxation for the purpose intended by said Statute.”
Defendants are the Louisiana State Department of Agriculture & Immigration, 'through Dave L. Pearce, as Commissioner, and the Louisiana Sweet Potato Advertising & Development Commission, through its Chairman. In answer, the Commissioner of Agriculture averred that the tax complained of was imposed for the benefit of the sweet potato industry and is neither excessive nor unequal, being imposed under the taxing power of the Legislature of the State of Louisiana in order to promote the industry; he contended for the Act’s constitutionality.
As stated supra, the trial court upheld the constitutionality of Act 434 of 1968 insofar as it related to plaintiffs-shippers — ; they now appeal to this Court where they submit: “It is thus clear that as the law now stands sweet potato farmers who also ship their sweet potatoes and all sweet potato farmers belonging to marketing co-operative associations are exempt from the tax. As matters now stand only those persons in the sweet potato business who neither ship their own sweet potatoes nor belong to marketing co-operative associations are subject to the tax and this is obvious and blatant discrimination in view of the fact that the proceeds of the tax are to be used for advertising to increase the consumption of Louisiana sweet potatoes as it is manifestly clear that the persons belonging to co-operative associations and the farmers who ship their own potatoes stand to benefit every bit as much from the increased consumption of sweet potatoes as the other shippers and it is unfair for a small segment of the farming population to have to pay a tax for advertisement which benefits all sweet potato farmers. Thus, as the law now stands it is clearly in violation of the equal protecting[on] clause of both the State and Federal Constitution and should be declared unconstitutional by this Court.”
*69 Herein, defendants contend that if plaintiffs could demonstrate that as shippers, they were being discriminated against, within their class, then, and only then, would it appear that a constitutional attack upon LSA-R.S. 3:451 et seq., would have some merit. (It is to be noted that Act 294 of 1942 is the forerunner of the contested legislation.)
LSA-R.S. 3:451, Act 294 of 1942, appearing in the Revised Statutes under “Advertising and Promoting Use of Sweet Potatoes,” provides:
“The purpose of this Part is to expand the market and increase consumption of sweet potatoes by acquainting the general public with the health giving qualities and the food value of the sweet potatoes grown in Louisiana, thereby promoting the general welfare of our people.”
LSA-R.S. 3:452, Act 294 of 1942, defines “Shipper” as any person, partnership, association, or corporation, engaged in the shipping of sweet potatoes or transporting sweet potatoes whether as owner, agent, or otherwise.
LSA-R.S. 3:453, Act 434 of 1968, provides :
“Louisiana sweet potato advertising and development commission; creation and organization
“A. The Louisiana Sweet Potato Advertising and Development Commission is created with its domicile at Baton Rouge, Louisiana, to be composed of eleven members, ten of whom shall be appointed by the governor. The commissioner of agriculture shall be ex officio a member of the commission. Three of the ten members to be appointed shall be practical sweet potato growers, three shall be handlers or shippers of sweet potatoes, three shall be commercial canners, and one shall be a banker with the knowledge of the sweet potato industry. The additional canner added to the membership of the commission in 1968 shall be initially appointed by the governor to serve until June 30, 1970; thereafter, this member shall be appointed for a term of six years, and vacancies in said office shall be filled as provided in Sub-section B hereof.
“B. One grower, one shipper, and one canner shall be appointed for a term of two years; one shipper, one grower, and one canner shall be appointed for a term of four years; one shipper, one grower, and the banker shall be appointed for a term of six years; thereafter appointments shall be made for six years. Vacancies in the membership shall be filled by appointment of the governor, and the person appointed to fill a vacancy shall have the same qualifications as is provided for his predecessor.
“C. A majority of the members of the commission shall constitute a quorum for the transaction of all business and the carrying out of duties of the commission. *71 Each member shall take and subscribe to the oath of office prescribed for state officers. No member of the commission shall receive any salary, but each member shall receive the sum of fifteen dollars per day for each day spent in actual attendance of meetings of the commission and such allowance for traveling expenses in attending the meetings as is allowed other state employees for traveling expenses.
“D. The members of the commission shall meet and organize immediately after their appointment, and annually thereafter shall elect a chairman, vice-chairman, and a secretary-treasurer from the membership of the commission, whose duties shall be those customarily exercised by such officers, or specifically designated by the commission. The commission may establish rules and regulations for its own government, and the administration of the affairs of the commission.
“E. The commissioner of agriculture is authorized to employ the necessary personnel to carry into effect the rules, regulations and ordinances that may be adopted by the commission.”
LSA-R.S. 3:454, Act 434 of 1968, provides :
“Powers
“The commissioner of agriculture shall administer the terms of this Part and control and disburse the proceeds of the tax levied and collected hereunder. He shall engage employees necessary to carry on the work of the commission; continue to maintain a field office at Opelousas, Louisiana, to carry on the work of the commission, at which office meetings of the commission may be held, and he may establish rules and regulations for the administration of the provisions of this Part. To assist in the collection of the tax, the commissioner may cause his duly authorized agent or representative to go upon the premises of any grower, shipper, dealer or handler of sweet potatoes and examine or cause to be examined by any such agent or representative any books, papers, records or memoranda bearing on the amount of taxes payable, and to secure other information directly or indirectly concerned in the enforcement of this Part.”
LSA-R.S. 3:455, Act 434 of 1968, provides :
“Tax on sweet potato shipments
“There is imposed and levied a tax at the rate of:
(1) Four cents per bushel of fifty pounds or fraction thereof on all Louisiana sweet potatoes inspected for shipment to fresh markets located in Louisiana and out of state, and to processing plants located out of state.
(2) Four cents per unit on each kind of product processed from sweet potatoes in Louisiana for human consumption. The units on which the tax will apply shall be *73 set by the Louisiana Department of Agriculture as determined through research by Louisiana State University to be equivalent to fifty pounds of the raw product.”
LSA-R.S. 3:456, Act 434 of 1968, provides :
“Collection, deposit and disbursement of sweet potato tax money
“A. The tax imposed and levied by this Part shall be collected by the Louisiana Department of Agriculture from:
(1) The shippers, along with the fee collected in connection with the inspection of sweet potatoes and the issuance of certificates and tags required for shipment to fresh market outlets located in and out of this state, and to processing plants located out of this state; and
(2) The processors operating in Louisiana. The tax due by the processors shall be collected semi-monthly during the processing season on all stock processed since the last collection was made.
“B. The proceeds of the tax collected from the shippers and processors by the department, together with the proceeds from the sale of any authorized publications of the commission, shall be deposited with the state treasurer in a special fund to be established by him for the Louisiana Sweet Potato Advertising and Development Commission in the administration of this Part, and disbursements thereof shall be made on the warrant of the commissioner drawn on the state treasurer out of the funds, provided, however, that disbursements may be authorized only by a majority of the members of the commission.
“C. The proceeds of one-fourth of one cent of the tax collected each year shall be disbursed by the commissioner, when aur thorized by a majority of the members of the commission, to finance activities and services initiated by the Louisiana Sweet Potato Association.”
LSA-R.S. 3:457, Act 555 of 1960, provides :
“Advertising sweet potatoes; contracts
“The commission shall plan and conduct a campaign for advertising, publicizing and promoting the increased consumption of sweet potatoes and as an incident thereto may prepare, print and publish for distribution and sale cookbooks which emphasize the value and -uses of sweet potatoes. It may contract for any advertising, publicity and sale promotion services, the amount of the contract to be limited each year to the estimated amount of the tax for the year less the estimated cost of administering this Part. The commissioner is authorized and empowered to carry out any and all contracts made by the commission.”
LSA-R.S. 3:458, Act 434 of 1968, provides :
“Offenses; penalty for nonpayment of tax.
“Any handler, dealer, processor or shipper of sweet potatoes who wilfully evades the *75 payment of the tax provided for in R.S. 3 :455, or who violates any other provisions of this Part, shall be fined not more than five hundred dollars. If any shipper or processor fails to pay any tax due under the provisions of this Part within thirty days after the tax payment is due, he shall be liable to a penalty of twenty per cent thereof, and the attorney general shall enforce payment of the tax and penalty by civil action against the shipper or processor for the amount of the tax and penalty.”
This Court in the case of Louisiana State Department of Agriculture v. Sibille, 207 La. 877, 22 So.2d 202 (1945), held that Act 294 of 1942 is violative of Art. X, Sec. 8, La.Const. of 1921, insofar as it levied a tax on sweet potatoes shipped or transported by the grozver himself. We stated, however: “But this does not mean that the act is not effective as to shippers of sweet potatoes other than the growers thereof. A shipper may be and frequently is a dealer in farm produce not grown by him, in which case he is not engaged in an agricultural pursuit but occupies the status of a commercial handler of the commodity. * * * ” (Emphasis ours)
In the recent case of Stanford v. Louisiana Sweet Potato Adv. & Dev. Com’n, 255 La. 96, 229 So.2d 712 (1969), we held that the taxing provisions of Act 434 of 1968 as applied to growers who ship their own sweet potatoes were unconstitutional, violating Art. X, Sec. 8, La.Const. of 1921, as an imposition of a license tax on those engaged in agricultural pursuits. We said: “ * * * Hence, we think the tax imposed by L.R.S. 3:455, when considered in the light of the foregoing principles and the definition as pointed out by the majority opinion in the Sibille case so as to include a farmer or grower as a shipper, thus subjects such farmers or growers to the ‘payment of the license tax, when he loads his truck or other conveyance with sweet potatoes and transports them to the market * * a necessary element of an agricultural pursuit. Consequently, the judgment of the trial court holding insofar as the act levies a tax on sweet potatoes shipped or transported by the grower himself is violative of Article 10, Section 8 of the Louisiana Constitution is correct * * (Art. X, Sec. 8, La.Const. of 1921, supra, exempts those engaged in agricultural pursuits from the payment of a license tax.)
As stated supra, plaintiffs are not growers of sweet potatoes; they are buyers of sweet potatoes for resale; in other words, they are shippers. In substance, they contend that they are being deprived of equal protection of the laws because as shippers they are suffering an unlawful and illegal discrimination.
The United States Supreme Court in the case of Reed v. Reed, 404 U.S. 71, 92 S.Ct. *77 251, 30 L.Ed.2d 225 (1971), stated: “In applying that clause, this Court has consistently recognized that the Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways. * * * The Equal Protection Clause of that Amendment does, however, deny to States the power to legislate that different treatment he accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification ‘must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.’ Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920). sji *
In Rinaldi v. Yeager, 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966), the United States Supreme Court held: “The Equal Protection Clause requires more of a state law than nondiscriminatory application within the class it establishes. * * * It also imposes a requirement of some rationality in the nature of the class singled out. To be sure, the constitutional demand is not a demand that a statute necessarily apply equally to all persons. ‘The Constitution does not require things which are different in fact * * * to be treated in law as though they were the same.’ Tigner v. State of Texas, 310 U.S. 141, 147, 60 S.Ct. 879, 882, 84 L.Ed. 1124. Hence, legislation may impose special burdens upon defined classes in order to achieve permissible ends. But the Equal Protection Clause does require that, in defining a class subject to legislation, the distinctions that are drawn have ‘some relevance to the purpose for which the classification is made.’ * * *” Cf. Schilb v. Kuebel, 404 U.S. 357, 92 S.Ct. 479, 30 L.Ed.2d 502 (1971).
This Court in interpreting the mandates of the Louisiana and United States Constitutions to the right of equal protection of the laws has held that the constitutional restriction does not operate so as to prevent a variety of classifications, or remove from the discretion of the State Legislature its right to provide a number of differences in the selection or classification of persons or property (geographical, or otherwise) so long as the discrimination is not invidious, unreasonable, or oppressive, but founded on just and equitable distinctions. Louisiana & Arkansas Railway Company v. Goslin, 258 La. 530, 246 So.2d 852 (1971). We also held in State v. Pebworth, 260 La. 647, 257 So.2d 136 (1972) that under traditional equal protection principles, a State retains broad discretion to classify as long as its classification has a reasonable basis.
The present legislation places shippers and growers in different categories; dif *79 ferent legislative treatment with respect to taxation has been accorded to growers. The classification is not arbitrary, invidious, unreasonable, or oppressive. It goes without saying that agriculture is accompanied by inherent risks which are not prevalent in buying, selling, and shipping. Art. 'X, Sec. 8, La.Const. of 1921, exempts those engaged in agricultural pursuits from the payment of a license tax; the present enactment does not exempt shippers from the payment of such tax. Shippers, however, who are not growers of sweet potatoes are within the purview of the taxing provisions of Act 434 of 1968, see LSA-R.S. 3:455 and 3:456 supra, in the same manner. There is neither discrimination nor classification among the shippers herein involved. We find as a reasonable basis for the classification between shippers and growers the fact that the shippers — when unconnected with growth — occupy a singular position with respect to the advertising of sweet potatoes. They enjoy and reap the benefits of the promotional activities of the Louisiana Sweet Potato Advertising and Development Commission; it follows that they must be assessed for the Commission’s activities. Hence, the instant contested tax is assessed against them. We conclude that it is neither unconstitutional nor discriminatory. Plaintiffs have made no showing of discrimination; their constitutional attack upon Act 434 of 1968 is without merit.
For the reasons assigned, the judgment of the Nineteenth Judicial District Court in and for the Parish of East Baton Rouge is affirmed. All costs to be paid by plaintiffs.
SUMMERS, J., dissents.

. Elton Smith, a resident of Evangeline Parish; E. H. Eriedman, representing Eriedman & Broussard, Inc., Lafayette Parish; Herbert Rich Company, St. Landry Parish; Louis Burleigh, St. Landry Parish; C. Prescott Willis, Acadia Parish- John Boole, St. Landry Parish; Shuteston Produce, Inc., St. Landry Parish; Dohmann & Eranchebois, Inc., St. Landry Parish; St. Landry Sweet Potato Company, Inc., St. Landry Parish; Luke Martin Company, Avoyelles Parish ; Welton Poitier, representing Opelousas Sweet Potato Company, St. Landry Parish; Alvin Smith, representing Smith Brothers Co., Inc., Acadia Parish; Aaron Boudreaux, St. Landry Parish ; Paul Breaux, Lafayette Parish; Jack Witcher, West Carroll Parish; Earl Roy, Avoyelles Parish ; Luke Martin, Avoyelles Parish; Alvin Decote, representing Pelican State Seed Co., Avoyelles Parish; Irvin Wimberly, St. Landry Parish; John A. Chaeliere, St. Landry Parish.

. “License taxes may be levied on such classes or persons, associations of. persons and corporations pursuing any .trade, *67 business, occupation, vocation or profession, as the Legislature may deem proper, except clerks, laborers, ministers of religion, school teachers, graduated trained nurses, those engaged in mechanical, agricultural or horticultural pursuits or in operating saw mills. Such license taxes may be classified, graduated or progressive. No political subdivision shall impose a greater license tax than is imposed for State purposes, provided that this restriction shall not apply to dealers in malt, vinous, distilled, alcoholic, spirituous or intoxicating liquors; but when an income tax is levied by the State, in lieu of State license taxes, this shall not prohibit the levy by the political subdivisions of the State of such license taxes as the Legislature may authorize. Those who pay municipal license taxes equal in amount to such taxes levied by the parochial authorities shall be exempt from such parochial license taxes.” Art. X, Sec. 8, La.Const. of 1921.