# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 15-617

STATE OF LOUISIANA

VERSUS

CALVIN LOUIS NOEL, III

AKA - CALVIN NOEL

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. CR 133164
HONORABLE PATRICK LOUIS MICHOT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## ELIZABETH A. PICKETT
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and John E. Conery, Judges.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS.**

**Conery, J., dissents and assigns written reasons.**

**Keith A. Stutes**
**Lafayette Parish District Attorney**
**Cynthia K. Simon**
**Assistant District Attorney**
**P. O. Box 3306**
**Lafayette, LA 70502-3306**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
 **State of Louisiana**

**Edward Kelly Bauman**
**Louisiana Appellate Project**
**P. O. Box 1641**
**Lake Charles, LA 70602-1641**
**(337) 491-0570**
**COUNSEL FOR DEFENDANT-APPELLANT:**
    **Calvin Louis Noel, III**

**PICKETT, Judge.**

## FACTS

On March 22, 2011, the defendant was stopped by a police officer who had just received a radio dispatch concerning a possible burglary. The officer was suspicious of the defendant because the defendant was walking in the middle of the roadway, was wearing a hoodie, and was walking from the direction of the possible burglary. When the officer attempted to pat down the defendant, the defendant told the officer that he "had a gun in his hip." The officer confiscated the gun and handcuffed and *Mirandized* the defendant. From his computer database system, the officer learned that the defendant was a convicted felon. At trial, the state and the defense stipulated that on October 2, 2008, the defendant was convicted of the crimes of sexual battery and unauthorized entry of an inhabited dwelling. According to the officer who testified at trial, there was no evidence linking the defendant to the possible burglary for which he received a radio dispatch on March 22, 2011.

On May 6, 2011, the defendant, Calvin Louis Noel, III, was charged by bill of information with one count of possession of a firearm by a convicted felon, a violation of La.R.S. 14:95.1. The defendant pled not guilty to the charge on May 23, 2011. On March 1, 2012, the defendant filed a Motion to Suppress, which was denied by the trial court on May 17, 2012. The defendant sought review of the trial court's denial of his motion to suppress with this court, and this court denied the defendant's writ, finding no error in the trial court's ruling. *State v. Noel,* 12-680 (La.App. 3 Cir. 8/17/12) (unpublished opinion), *writ denied*, 12-2081 (La. 10/4/12), 98 So.3d 847.

2

Subsequently, the defendant filed a Motion and Order for the Appointment of a Sanity Commission to examine the defendant as to his capacity to proceed to trial and as to his mental condition at the time of the alleged offense. On January 13, 2013, the trial court ordered the appointment of the sanity commission.[1] Thereafter, on May 23, 2013, the trial court found the defendant capable of proceeding to trial.

On October 17, 2013, the defendant filed a "Motion to Amend Plea of Not Guilty to Not Guilty and Not Guilty by Reason of Insanity." The motion to amend the defendant's plea was denied by the trial court on October 28, 2013. On that same date, the defendant also submitted a motion to quash based on the unconstitutionality of La.R.S. 14:95.1. Because of the motion to quash, the trial court granted a continuance of trial.

On September 2, 2014, the defendant proceeded to trial by jury. On that same date, a unanimous jury found the defendant guilty as charged. Subsequently, on January 21, 2015, the defendant was sentenced to fifteen years at hard labor, without benefit of parole, probation, or suspension of sentence, and to pay a fine of $2,500.00. The defendant filed a Motion for Appeal and Designation of Record, which was granted on February 12, 2015. The defendant is now before the court alleging two assignments of error regarding his conviction.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find there is one error patent.

---

[1]The minutes indicate the trial court appointed the sanity commission on January 14, 2013.

The trial court failed to properly advise the defendant of the time limitation for filing an application for post-conviction relief. At sentencing, the court stated, "[y]ou have two years within which to file for post-conviction relief." Louisiana Code of Criminal Procedure Article 930.8 provides the defendant has two years *after the conviction and sentence become final* to file an application for post-conviction relief. The trial court is directed to inform the defendant of the provisions of La.Code Crim.P. art. 930.8 by sending written notice to the defendant within ten days of the rendition of its opinion and to file written proof in the record that the defendant received the notice. *See State v. Conway*, 12-525 (La.App. 3 Cir. 11/7/12), 101 So.3d 1132.

## ASSIGNMENTS OF ERROR

1.   The Trial Court erred in denying Defense counsel's challenge for cause.

2.   The Trial Court erred in not allowing Calvin Noel to change his plea from not guilty to not guilty and not guilty by reason of insanity.

## ASSIGNMENT OF ERROR NUMBER ONE

In this assignment of error, the defendant argues that the trial court erred in denying his challenge for cause of Juror #86, Louise Clavier. The defendant challenged Ms. Clavier because her son-in-law worked for the sheriff's office, and Ms. Clavier felt she would "probably" tend to believe a police officer's testimony over another person's testimony. The defendant alleges that the trial court's denial of his challenge for cause forced him to use a peremptory challenge to excuse Ms. Clavier and to eventually exhaust all of his peremptory challenges. The state, on the other hand, argues that Ms. Clavier's responses as a whole showed her willingness and ability to decide the case impartially.

4

According to La.Code Crim.P. art. 797(2), a defendant may challenge a juror

for cause on the ground that:

> The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according the law and evidence[.]

In *State v. Schmidt*, 99-1412, pp. 30-31 (La.App. 3 Cir. 7/26/00), 771 So.2d

131, 148, *writ denied*, 00-2950 (La. 9/28/01), 798 So.2d 105, *cert. denied*, 535

U.S. 905, 122 S.Ct. 1205 (2002)(alteration in original), this court stated the

following regarding the purpose of voir dire:

> The purpose of voir dire is to test the competency and impartiality of prospective jurors to determine whether they are fit to serve on the jury. Voir dire is designed to uncover information about the prospective jurors, which may be used as a basis for challenges for cause or exercise of peremptory challenges. *State v. Berry*, 95-1610 (La.App. 1 Cir. 11/8/96); 684 So.2d 439, *writ denied*, 97-0278 (La. 10/10/97); 703 So.2d 603. When a defendant exposes the partiality of a juror, the juror may not be automatically excluded for cause. The state or the trial court may rehabilitate the juror by asking questions and obtaining answers demonstrating the juror's ability to decide the case impartially pursuant to law and evidence. Ultimately, the trial court has the power to determine whether or not a juror may be excused for cause. *State v. Turner*, 96-845 (La.App. 3 Cir. 3/5/97); 692 So.2d 612, *writ denied*, 97-2761 (La. 2/20/98); 709 So.2d 773.

> To succeed on appeal with the claim that the trial court erroneously denied the challenge of a prospective juror for cause, a defendant must exhaust his peremptory challenges and show that the trial court's denial of his challenge for cause was an abuse of discretion. *State v. Cross*, 93-1189 (La. 6/30/95); 658 So.2d 683; *State v. Robertson*, 92-2660 (La. 1/14/94), 630 So.2d 1278; *appeal after remand*, 97-0177 (La. 3/4/98); 712 So.2d 8, *cert. denied*, 525 U.S. 882, 119 S.Ct. 190, 142 L.Ed.2d 155 (1998); *Turner*, 692 So.2d 612. Once these factors have been established, prejudice is presumed and need not be shown by the defendant. *Id.*; *Cross*, 658 So.2d 683. In *Cross*, the Louisiana Supreme Court stated that a trial court's erroneous ruling on a challenge for cause, depriving the defendant of one of his peremptory challenges, "constitutes a substantial violation of [the defendant's] constitutional and statutory rights, requiring reversal of the conviction and sentence."

In the present case, the defendant exhausted all of his peremptory challenges. Thus, if the trial court erroneously denied one of his challenges for cause, prejudice should be presumed.

In *State v. Scott*, 04-1312, pp. 16-17 (La. 1/19/06), 921 So.2d 904, 921, *cert. denied*, 549 U.S. 858, 127 S.Ct. 137 (2006), *overruled on other grounds by State v. Dunn*, 07-878 (La. 1/25/08), 974 So.2d 658, the supreme court discussed the standard for reviewing the denial of challenges for cause:

> A trial court is vested with broad discretion in ruling on challenges for cause, and its rulings will be reversed only when a review of the voir dire record as a whole reveals an abuse of discretion. *State v. Cross*, 93-1189, p. 7 (La. 6/30/95), 658 So.2d 683, 686; *State v. Robertson*, 92-2660, p. 4 (La. 1/14/94), 630 So.2d 1278, 1281. . . . "A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably implied." *State v. Jones*, 474 So.2d 919, 926 (La.1985). However, a trial court does not abuse its discretion when it refuses to excuse a prospective juror on the ground he is not impartial where, after further inquiry or instruction, the potential juror has demonstrated a willingness and ability to decide the case impartially according to the law and evidence. *Robertson*, 92-2660 at p. 4, 630 So.2d at 1281.

Accordingly, we will review the challenge for cause denied by the trial court to determine whether the trial court abused its discretion.

During voir dire in the present case, the trial court asked the jurors if any of them had any close friends or relatives employed by the sheriff's department or other law enforcement agency. Ms. Clavier replied that her son-in-law worked at the sheriff's department. When asked if that would present any kind of problem with her being a fair and impartial juror, Ms. Clavier responded, "Maybe." The trial court moved on to other jurors before asking all of the jurors if any of them had a problem with following the law given to them. The record indicates that all prospective jurors remained silent. The trial court also instructed the jurors as to

6

the defendant's presumption of innocence and the state's burden of proving each element of the offense charged beyond a reasonable doubt. When the trial court instructed the jurors to raise a hand if unable to accept this law, the record indicates that all jurors remained silent. All jurors again remained silent when the trial court asked if any were unable to serve impartially because of a personal, business, family, or health reason and when asked if there was any reason whatsoever that they could not decide the case based solely on the evidence presented and in accordance with the law.

When asked by the state if her relationship with her son-in-law would affect her ability to be fair and impartial, the following colloquy ensued:

MS. CLAVIER:  (NUMBER 86)

     Possibly.

MS. SIMON:

     Possibly.  Oh, yeah, that's right, you said that.  Why do you think it could affect it?

MS. CLAVIER:  (NUMBER 86)

     Well, I think it's a conflict of interest, you know.

MS. SIMON:

     You think that you would have more of a tendency to believe a police officer because your son-in-law is a sheriff's officer?

MS. CLAVIER:  (NUMBER 86)

     Probably.

MS. SIMON:

     Would you have - - Would you feel an obligation to go back to him and explain to him what the verdict you reached would have been?

MS. CLAVIER:  (NUMBER 86)

Maybe.  Maybe I would if I was allowed to.

MS. SIMON:

I mean, he's not involved in this case.  That still would - -

MS. CLAVIER:  (NUMBER 86)

I'm just telling you that he's my son-in-law, and I don't know.

MS. SIMON:

Okay, thank you.

MS. CLAVIER:  (NUMBER 86)

You know, you hear things.  I'm just - - I just think it may be a conflict of interest.  I don't know.  I want to be fair to, you know, whoever's getting charged.

MS. SIMON:

Okay.  And you don't know if you can do that?

MS. CLAVIER:  (NUMBER 86)

I'm not sure.

During defense counsel's questioning of the jurors, the jurors were asked individually if they could look at the defendant right then and say he was innocent of any crime.  Ms. Clavier answered, "Yes."  When the trial judge asked if Ms. Clavier would be accepted as a juror, the state accepted her, but defense counsel moved to strike her for cause:

MR. BROWN:

Your Honor, I mean, she stated that her son-in-law was a sergeant in the sheriff's department and that would cause a problem for her, that she felt she had a conflict of interest in the case and would not be able to fairly sit on the case because of that.  I mean, she stated several times she felt that was a conflict of interest for her.

The state responded as follows:

8

MS. SIMON:

> She just couldn't put it into words. I agree, she said conflict of interest, but when I would try to get her to give me more, she would say "Possibly, maybe, she didn't know."

The trial court denied the challenge for cause, and defense counsel used a peremptory challenge to strike Ms. Clavier.

In his brief, appellate counsel, citing *State v. Kang*, 02-2812 (La. 10/21/03), 859 So.2d 649, asserts that the Louisiana Supreme Court has stated the following regarding a challenge for cause of a juror based on the juror's relationship with a police officer:

> Generally, an individual who will unquestionably credit the testimony of law enforcement officers over that of defense witnesses is not competent to serve as a juror. However, a mere relationship between a prospective juror and a law enforcement officer is not of itself grounds to strike the juror for cause. Additionally, a prospective juror's seemingly prejudicial response is not grounds for an automatic challenge for cause, and a trial judge's refusal to excuse him on the grounds of impartiality is not an abuse of discretion, if after further questioning the potential juror demonstrates a willingness and ability to decide the case impartially according to the law and evidence. But, a challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render a judgement according to law may be reasonably implied.

*Id.* at 652-53 (citations omitted).

Appellate counsel argues that Ms. Clavier was never rehabilitated and should have been excused for cause:

> In the case *sub judice*, Ms. Clavier was never rehabilitated, she admitted she could not be neutral, and Officer Melvin Riddell's testimony, the only witness presented by the State, was crucial in convicting Calvin Noel. A cursory glimpse of the colloquy between counsel and Ms. Clavier reveals her bias towards law enforcement. She was not rehabilitated by the State or the court, yet she was not removed for cause, severely prejudicing Calvin's case. Calvin Noel's conviction rested solely on the testimony of this one police officer. The denial of the challenge for cause constituted a substantial violation of Calvin's constitutional and statutory rights.

In its reply brief, the State responds that Ms. Clavier's responses as a whole showed her willingness and ability to decide the case impartially. The state further contends:

> The tone of Ms. Clavier's voice was important when she said she thought it was a conflict of interest. Her tone indicated these words were questions more than statements. Because she was unsure if that relationship itself created a conflict of interest, she wanted us to be aware of it. She did not provide any further explanation as to why she thought it was a conflict of interest. The trial judge is the best judge of the meaning of these words as he heard the tone of her voice. She said she wanted to be fair, and she answered that she could say defendant was innocent of the crime before the State of Louisiana met its burden of proof.

Considering these factors, the state contends that the trial court did not abuse its discretion when it denied the challenge of Ms. Clavier for cause.

The Louisiana Supreme Court has expressed similar views regarding the fact that the trial court is in the best position to evaluate a juror's expressions and intonations during voir dire. *State v. Dorsey*, 10-216 (La. 9/7/11), 74 So.3d 603, *cert. denied*, ___ U.S. ___, 132 S.Ct. 1859 (2012). The court found that because of this unique position, the trial court's decision regarding a juror's ability to be fair and impartial should be afforded great deference:

> Here, although Jackson's statements during voir dire appear to raise questions regarding his ability to be impartial, the district court judge had the benefit of observing Jackson's demeanor and hearing his responses first-hand and was therefore in a better position to determine whether Jackson would be fair and impartial in this case.

*Id.* at 625. Although the record in the present case mentions nothing regarding Ms. Clavier's facial expressions or tone of voice, we consider the trial court's ability to witness such things when we review the trial court's refusal to excuse Ms. Clavier for cause.

Ms. Clavier never unequivocally stated that she would give more weight to a police officer's testimony. Ms. Clavier used the words "possibly," "probably," and "maybe," when asked if her impartiality would be affected by the fact that her son-in-law worked with the sheriff's department. In *State v. Raymond*, 08-1204, p. 11 (La.App. 5 Cir. 4/28/09), 13 So.3d 577, 585-86, *writ denied*, 09-1205 (La. 2/5/10), 27 So.3d 296, the fifth circuit found the challenged juror did not unequivocally state he would give more credibility to a police officer when the juror simply stated "You would think" to the question of whether he would tend to believe a police officer over someone else. The fifth circuit also noted that the challenged juror "silently acquiesced when he did not respond to the court's inquiry as to whether there was anyone who could not hold the State to its burden of proof, give defendant the presumption of innocence, or be fair to both sides." *Id.* at 586. Similarly, in the present case, Ms. Clavier silently acquiesced by not responding when the trial court asked if any juror had a problem with following the law given to them; when the trial court asked if any juror was unable to accept the defendant's presumption of innocence; when the trial court asked if any juror was unable to serve impartially because of a personal, business, family, or health reason; and when the trial court asked if any juror could not decide the case based solely on the evidence presented and in accordance with the law. Moreover, Ms. Clavier specifically answered, "Yes," when defense counsel asked her if she could look at the defendant right then and say he was innocent of any crime.

The present case is distinguishable from cases which have reversed a defendant's conviction based on an improper denial of a challenge for cause. In *State v. Paul*, 99-92 (La.App. 5 Cir. 5/19/99), 738 So.2d 1128, four prospective jurors unequivocally stated that they would believe a police officer's testimony

11

over a non-police officer's testimony. Neither the prosecutor nor the judge attempted to rehabilitate the prospective jurors in *Paul,* and the jurors never expressly stated that they could set aside their biases and give the defendant a fair trial. *Id.* To the contrary, in the present case, prospective juror Clavier did not unequivocally state that she would believe a police officer over a non-police officer. Additionally, although Ms. Clavier was not specifically rehabilitated by the court on this issue, Ms. Clavier did acquiesce by her silence when asked if she could apply the law as given. Ms. Clavier also responded, "Yes," when asked if she could look at the defendant right then and say he was innocent. Finally, Ms. Clavier did not respond when the trial court asked if any juror was unable to serve impartially because of a personal, business, family, or health reason.

The present case is also distinguishable from *State v. White*, 574 So.2d 561 (La.App. 3 Cir. 1991), where this court reversed because of an erroneous denial of a challenge for cause. The prospective juror in *White* knew several Assistant District Attorneys, the District Attorney, and several friends in law enforcement. *Id.* The prospective juror in *White* answered, "I think it should be[,]" when asked if a police officer's testimony should be given more weight because of his particular job, and answered, "I think so[,]" when asked if a police officer might be more likely to tell the truth than someone else. *Id.* at 562. Unlike the present case, no rehabilitation of the prospective juror in *White* took place.

Finally, the present case is distinguishable from *State v. Hallal*, 557 So.2d 1388 (La.1990), a case where the supreme court reversed a conviction based on a prospective juror's acquaintance with five police officers the state intended to call as witnesses at trial. Although the prospective juror acknowledged that the defendant was presumed innocent and that the state had the burden of proof, the

12

prospective juror indicated that she would tend to believe the state's police witnesses because she knew the officers. *Id.* The supreme court found that the trial judge should have granted the challenge for cause since the prospective juror never expressly stated that she could put aside her acquaintanceship with the police officers. *Id.* Furthermore, the prospective juror began with the premise that the police officers *directly* involved in the arrest and questioning of the defendant were telling the truth. *Id.* To the contrary, there is no evidence in the present case that prospective juror Clavier's son-in-law was directly involved in the defendant's case.

Based on Ms. Clavier's answers as a whole, the deference that must be given to the trial court's denial of the challenge for cause, and the jurisprudence cited above, we find the trial court did not err in denying the defendant's challenge of Ms. Clavier for cause.

Accordingly, this assignment lacks merit.

### ASSIGNMENT OF ERROR NUMBER TWO

In this assignment of error, the defendant alleges that the trial court erred in denying his "Motion to Amend Plea of Not Guilty to Not Guilty and Not Guilty By Reason of Insanity." At a hearing on the motion, the trial court denied the motion based on its untimeliness and based on the fact that the defendant's insanity at the time of the offense was addressed by the doctors appointed to his sanity commission.

*Statutory and Jurisprudential Law*

Louisiana Code of Criminal Procedure Article 561 states the following about a defendant's right to amend his plea:

> The defendant may withdraw a plea of "not guilty" and enter a plea of "not guilty and not guilty by reason of insanity," within ten days after arraignment. Thereafter, the court may, for good cause shown, allow such a change of plea at any time before the commencement of the trial.

The motion to amend plea was filed over two years after arraignment. Thus, the trial court could allow the amendment only if good cause was shown.

In *State v. Miller*, 05-1826, p. 21 (La. 6/29/07), 964 So.2d 911, 923, the supreme court explained that "good cause" is "shown when the defendant produces an indicia of insanity and shows the plea is not changed as a dilatory tactic to achieve a strategic advantage." The court in *Miller* found the trial court erred in denying Miller's motion to change his plea and reversed Miller's conviction and sentence. Miller produced evidence of "almost lifelong mental problems for which defendant received intermittent treatment from the age of nine." *Id.* at 925. The court also noted "the absence of any suggestion that the motion to change plea had been filed for dilatory purposes[.]" *Id.* Miller filed his initial motion to amend his plea approximately three months after his arraignment and ten months before trial and filed his second motion to change his plea one month before trial. *Id.*

### *Indicia of Insanity*

In the present case, the Defendant did produce "an indicia of insanity" by way of the sanity commission reports. A sanity commission was ordered to examine the defendant's capacity to proceed to trial and the defendant's sanity at the time of the offense. At the hearing on the motion to amend plea, defense counsel argued as follows:

> Your Honor, in this case a sanity commission has examined Mr. Noel. While both doctors found him competent, both noted he has a long history of mental illness. Both diagnosed him with suffering from chronic paranoid schizophrenia and noted he has been prescribed and occasionally takes Seroquel, an antipsychotic drug. Further

14

records provided by the defense to both doctors in the sanity commission - - I have another copy if the Court wishes to examine them - - show that he has been treated both at University Medical Center and Tyler Mental Health Center since 2006 for mental illness.

Dr. David Dawes, one of the sanity commission doctors, summarized the following "Psychiatric History" for the defendant:

> He has been treated at UMC and Tyler Mental Health Center. He has been hospitalized on at least a few occasions. Diagnosis in the past has been paranoid schizophrenia. Apparently he only takes Seroquel in a low dose on an as needed basis only. He mentions that he has problems controlling his anger explaining this saying "I was in the penitentiary".

In the "Social History" section of his report, Dr. Dawes noted that the defendant is on Social Security Disability for schizophrenia. The defendant's sister reported that the defendant had been "in and out of mental illness." Despite the notations of mental illness, Dr. Dawes found the defendant capable of standing trial and found no reason to believe that his mental illness caused him to commit the crime for which he was charged. Dr. Dawes did opine, however, that the defendant needed to be on routine antipsychotic medications, for which he should immediately return to Tyler Mental Health Center for appropriate treatment.

Dr. Glenn Ally, the other doctor appointed to the sanity commission, likewise noted the defendant's extensive psychiatric history:

> He has been hospitalized for psychiatric reasons on a number of occasions. Records suggest he has been a patient at Dr. Joseph Henry Tyler Mental Health Center for many years, dating back to 2006. He has been hospitalized on several occasions by "Order of Protective Custody (OPC).["] Most of these occasions were initiated as a result of violent behavior when he was staying with his sister. He has been tried on several medications, but compliance seems to have been an on-going problem. His diagnosis at Tyler Mental Health Center has been *Schizophrenia, Paranoid Type*. Although he notes that he has been seen "recently" at Tyler Mental Health Center, he cannot tell me when that most recent appointment was.

15

Dr. Ally further noted that the defendant reported "auditory hallucinations," telling the doctor that he "hears voices that tell him to do bad stuff." Concluding his report, Dr. Ally opined that the defendant was presently competent to stand trial. Dr. Ally further concluded that his diagnostic impression was "Schizophrenia, paranoid type," but did not feel that the schizophrenia precluded the defendant from participating in trial nor precluded the defendant from knowing right from wrong at the time of the offense.

At the hearing on the motion to amend plea and in its brief on appeal, the state emphasizes that both doctors opined that the defendant's mental illness did not cause him to commit the offense for which he is charged. In its ruling, the trial court also stated that both doctors addressed the issue of insanity at the time of the offense in their reports. In *Miller*, 964 So.2d at 923, however, the supreme court found that although relevant, proof of insanity "at the time of the offense" is not the sole determinative factor in determining whether a defendant can change his plea. The supreme court in *Miller* first noted that in *State v. Taylor*, 254 La. 1051, 229 So.2d 95 (1970), it had reversed Taylor's conviction, finding the trial court erred in denying a motion to change plea filed on the day of trial. As noted by *Miller*, the court in *Taylor* found good cause existed based on the opinion of a coroner that Taylor was schizophrenic. *Miller*, 964 So.2d at 922, specifically noted that the court in *Taylor* did not require Taylor "to make a threshold demonstration that [his] . . . mental illness manifested itself at the time of the offense" in order to change his plea. The court in *Miller* further stated:

> In concluding that the defendant need only produce an indicia of insanity, or some evidentiary basis for the plea, to satisfy the good cause requirement, we note Article 561 does not specify a burden of proof. This fact is contrasted with LSA-C.Cr.P. art. 652, which, at trial, imposes on the defendant "the burden of establishing the defense

of insanity at the time of the offense by a preponderance of the evidence." Given this statutory scheme, it would be incongruent to require the defendant to prove his insanity by a preponderance of evidence in order to merely change his plea.

Although an indicia of insanity at the time of the offense may be a relevant consideration, such cannot be the sole determinative factor in deciding whether a defendant may change his plea pursuant to Article 561. The language of Article 561 does not obligate the defendant to prove his insanity at the time of the offense to change his plea. Further the defense of insanity at the time of the offense is ultimately an affirmative defense which must be decided by the factfinder at trial. LSA-C.Cr.P. art. 652.

*Id.* at 922-23.

"Conversely," the supreme court noted, "a defendant who is possessed of no evidence whatsoever of mental illness would not be able to show good cause as required by Article 561." *Id.* at 923. As examples of cases wherein the defendant failed to produce evidence of mental illness, the supreme court cited the following:

> *See State v. Sampson*, 480 So.2d 952, 954 (La.App. 2 Cir. 1985) (The "indicia" of an evidentiary basis for the change of plea, or "good cause," is not shown simply by the testimony of an assistant jailer that defendant was verbally abusive toward another jail inmate.); *State v. Baldwin*, 388 So.2d 664, 670 (La.1980), *cert. denied*, 449 U.S. 1103, 101 S.Ct. 901, 66 L.Ed.2d 830 (1981) (Good cause is not shown simply by a defendant's testimony that he was a "heavy drinker."); *State v. Hurst*, 99-2868 (La.App. 1 Cir. 10/3/00), 797 So.2d 75, 81, *writ denied*, 2000-3053 (La. 10/5/01), 798 So.2d 962 (On motion to reconsider sentence, defense counsel conceded the motion for change of plea was a strategy to get evidence of the defendant's diminished capacity before the jury.).

*Id.*

Considering the defendant's present diagnosis of paranoid schizophrenia and hospitalization for that illness, an "indicia of insanity" was shown in the present case. However, as noted by the court in *Miller*, the defendant must also show that his request to amend his plea is not a dilatory tactic to achieve a strategic advantage.

17

*Dilatory Tactic*

In addition to denying the defendant's motion to amend his plea because of the doctors' reports, the trial court also denied the motion because of the untimeliness of the motion. As stated previously, the motion to amend plea must be filed within ten days of arraignment. La.Code Crim.P. art. 561. Thereafter, the plea may be amended only if the trial court finds good cause for the amendment. In this case, the motion to amend plea was filed over two years after arraignment. Thus, on its face, the request to amend plea was untimely. In attempting to find out why the motion was filed untimely, the trial court initiated the following colloquy with defense counsel:

> THE COURT: Now, your discovery of the extent of his mental illness and his medication history was only completed when you got these reports; is that right?
>
> MR. BROWN: Yes, Your Honor. But it's been ongoing with Mr. Noel, his mental illness. We had him examined by a doctor just last week. It's been fluctuating during my representation of him.
>
> THE COURT: Because the timing of the motion is why I'm asking that question of why the motion was filed late, the motion to change his plea. The extent of the mental illness was not known by you until - -
>
> MR. BROWN: The extent was known, Your Honor, however, in my discussions with Mr. Noel it appears to have worsened again.

The state then voiced its objection based on the timeliness of the motion:

> MR. SIMON: Your Honor, the State would object based on timeliness of this motion to change his plea from not guilty to not guilty by reason of insanity. And just for the record, Your Honor, this case has been pending since May 6th of 2011, and the defendant was arraigned on May 23th of 2011.
>
> . . . .
>
> Your Honor, also, the State would argue that the sanity commission was empanelled and the Court found the defendant competent to proceed back on May of - - 23rd of 2013, and we've

18

since had another trial date set since the May 23rd hearing back in July. And the State argues that if there was going to be a change in the plea to not guilty to not guilty by reason of insanity, it should have been done way before October 17th of this year. And the State only got notice of it on October 22nd, which was at the end of the week last week. And so we would object that, both, it is delayed and that good cause has not been shown in this case.

In its brief to this court, appellate counsel contends that the motion to amend the defendant's plea was clearly not a delay tactic since it was filed almost one year before trial. It appears, however, that the defendant's case was scheduled for trial on the day the motion was heard – October 28, 2013. According to the minutes, the defendant's trial was set for "trial docket" on July 29, 2013. Pursuant to a motion filed by the defendant on July 29, 2013, the matter was continued "to the docket of October 28, 2013." At the beginning of the October 28, 2013 hearing, the state noted that the defendant's case was on page three of the docket that day. The state also noted that "[w]e have a trial set," but there were some preliminary defense motions to take up first. The first motion was the motion to amend plea, which the trial court denied. The second motion was a motion to quash based on the unconstitutionality of La.R.S. 14:95.1. Although defense counsel stated that he was prepared to argue the motion to quash, he asked the trial court to grant a continuance until the supreme court decided a case pending before it with the very same issue. The state objected to the continuance but acknowledged that judicial efficiency would best be served by waiting for the supreme court to issue its opinion. Thus, the trial court granted the defendant's request for a continuance but warned that it would be the last one. Consequently, even though the defendant's trial was not held until almost a year after the motion to amend plea, the motion to amend plea was actually filed a few days prior to the October 28, 2013 trial date and actually heard on the October 28, 2013 trial date.

The sanity commission reports were filed several months earlier on May 23, 2013, the day on which the trial court found the defendant competent to proceed. Thus, defense counsel was aware of the defendant's mental illness diagnosis at that time and could have filed a motion to amend plea shortly thereafter. When questioned as to why he did not file the motion to amend plea when the mental illness and medication history was discovered via the reports, defense counsel explained that the defendant's illness had worsened. This explanation still does not excuse the failure to file the motion to amend the plea shortly after the reports were rendered. The defendant's mental illness was evident from the reports, which were submitted at least five months before the defendant's request to amend his plea.

In *Miller*, the supreme court cited two cases in which it reversed convictions based on the trial court's wrongful denial of the defendants' motions to change their pleas. The two cases are *Taylor*, 229 So.2d 95, and *State v. Delpit*, 341 So.2d 876 (La.1977). Notably, in both *Taylor* and *Delpit*, the motions to amend plea were filed on the day of trial. *Id.* The supreme court in *Miller*, 964 So.2d at 922, fn. 21, acknowledged this fact but stated the following:

> In citing *Taylor* and *Delpit*, we in no way sanction or endorse filing a change of plea on the day of trial. Currently, with advances in mental health evaluation and testing, substantially more evidence is generally available on mental health issues than indicated in *Taylor* and *Delpit*. The closer in time to trial the change in plea is filed, the greater the risk good cause will not be shown.

In *Taylor*, the supreme court found that the trial court erred in denying Taylor's request to amend his plea on the day of trial. At a hearing to determine whether a sanity commission should be appointed, the coroner testified that Taylor impressed him as being psychotic and schizophrenic. The sheriff also testified that he heard Taylor mumbling and apparently talking to God in his cell. The trial

judge appointed a sanity commission, as a result of which three psychiatrists reported that Taylor was capable of proceeding to trial. The reports were homologated on June 17, 1968, and Taylor was found competent to proceed. Trial was set to proceed eight days later on June 25, 1968. On the day of trial, defense counsel requested that Taylor be allowed to change his plea to not guilty and not guilty by reason of insanity. The trial court denied Taylor's request. Finding the trial court erred, the supreme court stated the following:

> We think the judge was in error and clearly abused his discretion under the facts and circumstances here presented. In the first place, the testimony given by the coroner (although not a psychiatrist, he was shown to have some psychiatric training), that this appellant was schizophrenic, a well-known form of insanity (see Webster's New International Dictionary, 2nd Ed., page 2235), was sufficient in itself to justify the granting of the motion for a change of plea. And when it is considered that the medical opinion of the coroner is supported by the factual testimony of the sheriff, which was taken on the motion for the appointment of a sanity commission, and that defense counsel also offered to produce the evidence of an inmate, who had been confined in jail with appellant, to the same effect, we wonder how much more and what additional type of evidence would have been required by the judge to establish good cause for the changing of a plea.

> But, beyond this, we believe the judge should have given serious consideration to two other factors involved. Initially, appellant was on trial for his life and, this alone, in the absence of a showing by the State that the plea was being filed solely for delay, might have been sufficient to warrant relaxation of strict adherence to the procedural rule provided by Article 561 which, according to the official comment of the redactors, was enacted to obviate the practice of dilatory tactics by defendants in criminal cases.

> Moreover, in enforcing rigidly the procedural requirements of Article 561 C.Cr.P., the judge apparently lost sight of the fact that the report of the sanity commission simply determined the issue of appellant's present sanity and that no medical opinion whatever had been voiced (other than that of the coroner) concerning appellant's sanity at the time he committed the offense. . . .

> We also find that the judge apparently failed to give consideration to the fact that, following arraignment, defense counsel timely applied for and the judge ordered the appointment of a sanity

21

commission, which commission reported to the judge by letter dated June 3, 1968, and this report was not homologated until June 17, 1968. During this time the issue of appellant's present insanity was still pending, that is, from May 3 to June 17, 1968, and it is fair to say that defense counsel were not remiss in failing to move for a change of appellant's plea until the sanity report had been approved. Following the homologation of the report on June 17, only seven days elapsed before the date of appellant's trial. Under these circumstances, particularly in the absence of any contention by the State that the request for a change of plea was merely a delaying tactic, the judge's ruling appears unreasonable.

*Id.* at 97-98 (footnote omitted).

Similarly, in *Delpit*, 341 So.2d 876, the supreme court reversed Delpit's armed robbery conviction because the trial judge denied Delpit's request to change his plea on the day of trial. The evidence of insanity in Delpit consisted of documents showing Delpit was functioning at the lower end of a borderline mental retardation range. One document indicated that Delpit's low mental ability limited his ability to determine "right from wrong" in certain situations. The evidence also consisted of an affidavit from Delpit's mother indicating Delpit had been a problem since he was a small child, indicating he did not seem to understand right from wrong and indicating that he attended a psychiatric clinic as a small child. Delpit's defense counsel also noted that Delpit was under psychiatric treatment and was awaiting a report from the psychiatrist. The supreme court found this evidence was a sufficient showing of "good cause" to support a change of plea. *Id.* at 879. The supreme court particularly noted that there was no indication that Delpit sought to change his plea as a dilatory tactic. Additionally, the supreme court noted that the trial court at first seemed prepared to grant Delpit additional time to establish good cause, but for reasons unrelated to Delpit's request, later refused to allow Delpit to change his plea and ordered trial to proceed immediately.

Considering the supreme court's admonition in *Miller* that its citation of *Taylor* and *Delpit* in no way sanctioned the filing of a motion to amend plea the day of trial and considering the extenuating circumstances in both *Taylor* and *Delpit*, we find the cases are distinguishable from the present case. In *Taylor*, the homologation of the sanity commission reports occurred only days before the trial. In *Delpit*, a psychiatric report was pending when Delpit requested to amend his plea. On the other hand, the psychiatric reports relied upon by the defendant in the present case were submitted over five months before trial, and the only excuse given by defense counsel for failing to file the request to change the plea sooner was that the defendant's mental condition had worsened.

Unlike *Taylor* and *Delpit,* in *State v. Lee*, 10-418 (La.App. 1 Cir. 9/10/10) (unpublished opinion)[2], the first circuit found no error in the trial court's denial of a motion to change plea heard three days before trial was scheduled to commence. As in the present case, a sanity commission was appointed to examine Lee. Seven months after the reports were submitted, Lee requested to change his plea. Lee attempted to show good cause for the delay by citing to one of the sanity commission reports wherein Dr. Mancuso opined that Lee exhibited criteria for "'psychotic disorder not otherwise specified.'" *Id.* at 4. The trial court denied the request, noting the untimeliness of the motion and noting that Dr. Mancuso determined to a reasonable degree of medical certainty that Lee's mental disease or defect did not prevent Lee from knowing right from wrong at the time of the offense. The first circuit upheld the trial court's denial, finding as follows:

> The defendant's burden of showing good cause for a change of plea logically increases each day that his trial date nears. The defendant waited over three years, until the first workday before trial,

[2]This case is cited at 2010 WL 3527315.

23

> to file a motion to change his pleas. He presented no evidence that he did not understand the difference between right and wrong at the time he committed the offense. Moreover, an expert who evaluated the defendant found that whatever disease or mental defect he may have had did not prevent him from being able to distinguish right from wrong at the time of the offense. Accordingly, the trial court did not abuse its discretion in refusing to allow the defendant to change his pleas.

*Id.* at 5 (citations omitted) (footnote omitted).

Similarly, although the sanity commission doctors acknowledged the present the defendant's diagnosis of paranoid schizophrenia, both stated that this mental illness did not cause the commission of the present offense. In *State v. Mercer*, 564 So.2d 783 (La.App. 2 Cir. 1990), the second circuit found the trial court erred in denying Mercer's request to change his plea *forty* days prior to trial. There was evidence in *Mercer* that the supervisor of nurses for the Sheriff's Department regularly administered Mercer prescription drugs, including "'Lithium, a known anti-depressant frequently used to treat manic-depressive behavior, and Prolixin.'" *Id.* at 786. There was also evidence from Mercer's family that Mercer had a history of commitments to Central State Hospital and that Mercer suffered from some type of "'grandiose delusion.'" *Id.* One of the hospital discharge summaries indicated Mercer had an "'anti-social personality.'" *Id.* Despite the absence of psychiatric testimony, the second circuit found Mercer showed good cause to warrant a change of plea. *Mercer* is distinguishable from the present case, however, since the defendant in the present case filed his motion to change plea only a few days before trial.

Considering the heightened burden that exists the closer to trial a request to amend a plea is made, we find the trial court did not err in denying the defendant's motion to change his plea only a few days prior to trial. As considered by both *Lee*

24

and *Jason*, both of the psychiatrists in the present case opined that the defendant's mental illness did not cause him to commit the offense for which he is charged. Although this ultimate issue may have been appropriately left for the fact finder if the request to amend plea had been filed shortly after the sanity commission reports were submitted, the defendant's delay in filing this motion increased his burden of proving good cause. Thus, we find the trial court did not err in finding no good cause and denying the defendant's request to amend his plea.

## CONCLUSION

The defendant's conviction and sentence are affirmed. The trial court is directed to inform the defendant of the provisions of La.Code Crim.P. art. 930.8 by sending written notice to the defendant within ten days of the rendition of the opinion. The trial court is instructed to file written proof in the record that the defendant received the notice.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS.**

STATE OF LOUISIANA

V.

CALVIN LOUIS NOEL, III AKA CALVIN NOEL

**CONERY, J., dissents and assigns reasons.**

I respectfully dissent on the issue of the defendant's Motion to Amend Plea of Not Guilty to Not Guilty and Not Guilty by Reason of Insanity (Motion to Amend). I would reverse the conviction and sentence, order the trial court to allow the defendant to amend his plea, and remand for a new trial.

The record shows that the defendant does have serious psychiatric problems, including a diagnosis of paranoid schizophrenia with hospitalizations, prescribed medication and continued treatment for that mental illness. The trial court had ordered a sanity commission empaneled for the purpose of determining capacity to stand trial. The experts appointed to the sanity commission filed their reports, which were admitted into evidence at the hearing on the Motion to Amend. Both doctors concluded that in spite of defendant's serious mental health problems, he was competent to stand trial. A few months later, counsel for defendant filed the Motion to Amend and at the hearing on the Motion, defense counsel pointed out that the sanity commission had been empaneled for the purpose of determining capacity to proceed to trial and not the issue of insanity at the time of the commission of the crime. While the issue of competency at the time of

commission of the crime was mentioned in the report of the sanity commission, counsel had no opportunity to cross examine the doctors or call witnesses on this important issue. In effect, denying the Motion to Amend would prevent counsel from presenting the only remaining defense available to the defendant, not guilty by reason of insanity.

Louisiana Code of Criminal Procedure Article 561 states that the defendant has an absolute right to change his plea to Not Guilty and Not Guilty by Reason of Insanity within ten days of arraignment. The article goes on to state, "Thereafter, the court may, for good cause shown, allow such a change of plea at any time before the commencement of trial." In this case, more than one year had elapsed from the date of arraignment when the Motion to Amend was filed. At the hearing, the trial judge denied the Motion to Amend solely on the ground of "timeliness," and did not specifically rule on whether the defendant had shown "good cause" to amend the plea.

The majority correctly notes that the hearing on the Motion to Amend was filed only a few days before the then scheduled trial date and several months after defendant received the sanity commission report. The majority also noted that in denying the Motion to Amend, the trial judge did refer to the reports of the experts, both of whom expressed an opinion that the defendant did know "right from wrong" at the time of the commission of the offense.

However, it is clear from the record that counsel did not file the Motion to Amend as a "delay tactic" or to achieve a "tactical advantage." I respectfully disagree with the majority's conclusion that, "Although this ultimate issue may have been appropriately left for the factfinder if the request to amend plea had been filed shortly after the sanity commission reports were submitted, the defendant's

delay in filing this motion *increased his burden of proving good cause*." (Emphasis added.)

Louisiana Code of Criminal Procedure Article 561 does not provide for a "heightened burden" when the Motion to Amend is filed shortly before trial. To the contrary, La.Code Crim.P. art. 561 provides, in pertinent part, "the court may, for good cause shown, allow such a plea at *any time before commencement of trial.*" (Emphasis added.)

In *State v. Taylor*, 254 La. 1051, 229 So.2d 95 (1970), and *State v. Delpit*, 341 So.2d 876 (La.1977), the supreme court reversed convictions based on the trial court's wrongful denial of the defendant's Motion to Amend Plea filed *on the day of trial. See also State v. Mercer*, 564 So.2d 783 (La.App. 2 Cir. 1990).

It is significant to note that even though the defendant's Motion to Amend was filed shortly before his then scheduled trial date, there was a pending defense Motion to Quash scheduled for hearing that same day alleging that the felon in possession statute, La.R.S. 14:95.1, was unconstitutional. The trial judge, the State, and defense counsel knew that the case of *State v. Draughter*, 13-914 (La. 12/10/13), 130 So.3d 855, which would decide the constitutional issue, was pending before the Louisiana Supreme Court. The trial judge granted a continuance of the trial, with no strong objection from the State, on the very grounds that *Draughter* was pending before the supreme court, and it would be prudent to wait for a supreme court ruling on the constitutionality of the felon in possession statute before trying this defendant on that charge. In fact, this case was not rescheduled for trial for almost one year following the hearing on the Motion to Amend. Therefore, it cannot seriously be argued that the defendant filed the Motion to Amend as a dilatory tactic or in order to obtain a tactical advantage.

The "timeliness" of the motion should not have been a deciding factor, as this case was not going to trial until after *Draughter* was decided.

Again, the trial judge denied the Motion to Amend strictly on the "timeliness" issue and his reasons for ruling did not discuss "good cause."

Louisiana Constitution Article 1, Section 16, is pertinent to a decision in this case and states, in pertinent part, "An accused is entitled to confront and cross examine the witnesses against him, to compel the attendance of witnesses, to present a defense, and to testify in his own behalf." The trial court's ruling, in effect, denied the defendant his constitutional right to cross examine the medical experts on the issue of his sanity at the time of the commission of the offense, to call witnesses on his own behalf, and, perhaps, to testify on that issue, and hence deprived the defendant of his only realistic available defense, Not Guilty by Reason of Insanity.[1] I would find that, based on all the circumstances of this case, the trial court abused its discretion by denying the defendant an opportunity to amend his plea and put on a defense.

## CONCLUSION

This mentally ill defendant was walking on a public street with a "hoodie" when stopped by the police. He was a convicted felon and did have a gun on his person, which he promptly admitted to the officer on initial questioning. However, the record confirms that defendant has severe mental health issues. He should be allowed to amend his plea so as to put the issue of sanity at the time of the commission of the offense before the jury and exercise his constitutional right to present a defense.

---

[1] The defendant had previously filed a Motion to Suppress the Evidence on the grounds that the stop and initial questioning by the police was unconstitutional. The trial court denied the Motion, and a panel of this court, as well as the Louisiana Supreme Court, denied writs on that issue, as noted by the majority.

I would reverse the conviction and sentence, order the trial judge to allow the defendant to change his plea to Not Guilty and Not Guilty by Reason of Insanity, and remand for a new trial.  In light of my position on reversal on this issue, a discussion of the remaining assignment of error is pretermitted.